**Delmus G. GROSS, Appellant,**

v.

**CITIZENS FIDELITY BANK—
WINCHESTER, Appellee.**

**CITIZENS FIDELITY BANK—
WINCHESTER, Cross–
Appellant,**

v.

**Delmus G. GROSS, Cross–Appellee.**

Nos. 92–CA–0604–MR, 92–CA–0712–MR.

Court of Appeals of Kentucky.

Dec. 10, 1993.

---

James T. Gilbert and Charles R. Coy, Richmond, for appellant/cross-appellee.

Richard C. Ward, Barbara B. Edelman and Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, for appellee/cross-appellant.

Before DYCHE, McDONALD and WILHOIT, JJ.

DYCHE, Judge.

Delmus G. "Bunt" Gross, a prosperous car dealer and resident of Estill County, did his banking business with Union Bank and Trust Company in Irvine until 1985, when a solicitation from Ray Reichel, an officer at Citizens Fidelity Bank ["Citizens"] in Winchester, began a business relationship which culminated in the events prompting this litigation.

In July 1985, Gross established a line of credit with Citizens in the amount of $200,000; half of this amount was secured by a certificate of deposit, the other half unsecured except for Gross's financial statement. This "operating line" serviced the every-day needs of Gross's car dealership—financing new car purchases, buying trade-ins, etc. The operating line, which ultimately reached the level of one-half million dollars, was reduced to a zero balance annually, generally in November or December, when Gross received his "hold-back" check from General Motors. The hold-back account represented monies earned by the dealership, but held back until near year's end by General Motors; during the years in question, Gross's

hold-back had averaged $400,000. On November 14, 1988, Gross had paid the operating line in full, in the sum of approximately $160,000. At this time the operating line was secured in part by certificates of deposit, and in part by Gross's financial statement, just as it had been from the inception of the relationship.

In early 1987, Gross established another line of credit at Citizens, this for the purpose of constructing a restaurant building. The amount of this second line was also $500,000; as security for this credit, Gross executed a first mortgage on the property, and assigned to the bank a life insurance policy in the face amount of one million dollars. Gross ultimately drew approximately $460,000 on this line. He made payments on the principal amount by using proceeds from the rental of the property; interest payments were made "out of his pocket."

All was well between bank and customer until Gross was indicted by a federal grand jury on December 14, 1988, for violations of drug and currency laws; he was accused of being involved in a money-laundering scheme related to drug trafficking.

An officer of the bank heard a news account of the indictment, and the government's claim of forfeiture of Gross's business and home. A meeting of certain of the bank's officers was convened at the bank office in Winchester, after hours, to consider what action, if any, for the bank to take with regard to Gross's indebtedness with the bank.

The decision reached at this meeting, and carried out that same evening, was to set off Gross's certificates of deposit, which with accrued interest totalled $309,000, against the debt on the restaurant building. It is unquestioned that the certificates had been posted to cover the operating line (the balance of which was zero at the time of the set-off), that the operating line and the restaurant debts were totally unrelated, and that Gross was current on the restaurant loan at the time of the set-off.

The bank notified Gross of this action the next morning. At that time, he offered no protest of the action. He did, however, initiate this action at a later time to recover damages he alleges to have incurred as a result of the bank's action.

The complaint was filed in the Estill Circuit Court, but venue was changed to Clark Circuit Court on the motion of Citizens, and over Gross's objection. Following a trial before a jury, judgment was entered in favor of the bank. This appeal followed. After a thorough review of the record and the videotape of the oral argument, and lengthy reflection, we affirm.

■ Gross first argues that it was error for the trial court to change the venue of this action. We disagree. The applicable statute, KRS 452.445, reads as follows:

Excepting the actions mentioned in sections KRS 452.400 to 452.420 both inclusive, and in KRS 452.440 and KRS 452.465, an action against an incorporated bank or insurance company may be brought in the county in which its principal office or place of business is situated; or, if it arise out of a transaction with an agent of such corporation, it may be brought in the county in which such transaction took place.

None of the exceptions apply. This is purely and simply an action against an incorporated bank, brought in Clark County, where the principal office and place of business are located, and where the transaction (the set-off) occurred. We need not examine the theories behind Gross's cause of action nor other venue statutes to adjudge that the trial court was correct in changing the venue of this action. This specific statute answers the question; the answer is counter to Gross.

The remaining argument of Gross on appeal is that the trial court "failed to submit appellant's theories of the case supported by the evidence to the jury...." The theories, and the reasons that the trial court was correct in its action, will be discussed in the order presented in appellant's brief.

■ 1. *Good faith obligation of the bank to Gross.* Gross first alleged that the bank, in declaring him to be in default and in accomplishing the set-off, violated its duty of good faith toward him, and that such violation damaged him. Although the trial court did instruct the jury that the bank owed a

duty of good faith to Gross in deciding whether he was in default on the loan, Gross argued that the "special" nature of the deposit (that it was made for the sole purpose of securing the operating line) represented by the certificates created an extra duty of good faith, that being good faith in "acting against the collateral, or off-setting the CD's."

Appellant relies heavily on *First and Farmers Bank of Somerset, Inc. v. Henderson,* Ky.App., 763 S.W.2d 137 (1988), a case dealing with self-help repossession of consumer goods and breach of the peace. We find that case, and the footnote dealing with a "two step" analysis of good faith, unpersuading, in light of the contract between the parties herein.

Each of the notes executed by Gross contained the following language:

I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON THE OTHER SIDE).

. . . .

SET–OFF: You [the Bank] have the right to set-off any amount I [Gross] owe you under this note against any right I have to receive money from you. If my right to receive money from you is owned by someone else not paying this note, your set-off can only reach funds I could have reached with my own request or endorsement. Your right of set-off does not extend to accounts where my rights are only as a fiduciary. It also does not extend to my IRA or other tax-deferred retirement account.

Your right of set-off applies without your first telling me you are going to use it. It applies no matter what sort or value of collateral is on this loan. It also applies no matter who else has agreed to pay this note.

. . . .

DEFAULT: I will be in default if any one or more of the following occur:

. . . .

(8) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you.

(9) Anything else happens which causes you to believe that you will have difficulty collecting the amount I owe you.

REMEDIES: If I am in default on this note, you have the following remedies:

(1) You may demand immediate payment of all I owe you under this note.

(2) You may set-off this debt against any right I have to the payment of money from you.

(3) You may demand more security or new parties obligated to pay this note in return for not using any other remedy.

(4) You may make use of any remedy you have under state or federal law.

. . . .

In light of these provisions, we deem any "second step" good faith inapplicable. Gross had agreed in advance to the actions of the bank in the case of default. The jury found that the bank declared the default in good faith, and that finding has not been challenged. The actions of the bank were proper, as were the instructions of the trial court.

■ **2.** *Conversion.* Gross claimed that the use of the collateral from one loan to reduce the indebtedness on another loan constituted conversion of his funds. The trial court also refused to instruct the jury on this alleged cause of action. The same analysis as above applies here. Gross consented to the actions when he signed the notes. He cannot now complain.

■ **3.** *The tort of outrage.* Gross complained that the conduct of the bank was "imprudent and grossly negligent," and constituted outrageous conduct, recognized as an actionable tort in *Craft v. Rice,* Ky., 671 S.W.2d 247 (1984). As *Rigazio v. Archdiocese of Louisville,* Ky.App., 853 S.W.2d 295 (1993), makes clear, however, if the conduct complained of "was not intended *only* to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Id.* at 299 (emphasis added).

There has been no allegation or proof that the conduct involved herein was engaged in for that purpose. The trial court was correct in directing the verdict for Citizens.

■ 4. *Intentional interference with prospective contractual advantage.* This cause of action was based on Gross's assertion that the set-off, by depriving him of his operating line, effectively ran him out of business. This allegation was made despite the uncontradicted testimony that a restraining order entered December 14, 1988, by the United States District Court would have had the same practical effect on Gross's affairs, at least in the short run. Gross argues that it was error for the trial court to have allowed a finding of good faith on the default issue to eliminate consideration of this issue, citing *National Collegiate Athletic Association v. Hornung,* Ky., 754 S.W.2d 855 (1988). We do not read this case the same way appellant does. In fact, *Hornung, supra,* supports the actions of the trial court.

> Even if evidence is presented which would otherwise make a submissible case, *the party whose interference is alleged to have been improper may escape liability by showing that he acted in good faith to assert a legally protected interest of his own.* While the party seeking recovery bears the burden of proving that the interference was improper, the party asserting a right to protect his own interest bears the burden of proving his defense.

754 S.W.2d at 858 (emphasis added). Once the jury "bought" the good faith defense allowed under *Hornung, supra,* consideration of the primary claim of intentional interference would have been an exercise in futility.

Ruling as we have, resolution of the cross-appeal is unnecessary.

The judgment of the Clark Circuit Court is affirmed.

All concur.