**Joyce LANE, Plaintiff–Appellant,**

v.

**BELL COUNTY BOARD OF EDUCATION, Yvonne Slusher Gillium, Douglas Fitts, Defendants–Appellees.**

No. 02–5345.

United States Court of Appeals, Sixth Circuit.

Aug. 12, 2003.

Before BOGGS and GILMAN, Circuit Judges; and DOWD, Senior District Judge.*

## OPINION

DOWD, Senior District Judge.

This action was commenced by plaintiff-appellant Joyce Lane on June 26, 1998.

---

* The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

The complaint asserted three claims: (1) discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.;* (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.;* and (3) outrageous conduct based on Kentucky common law. The complaint named three defendants: Board of Education of Bell County, Kentucky; Superintendent Yvonne Slusher Gillium; and Principal Douglas Fitts (collectively "defendants").

Our review involves two orders of the district court, one issued on January 25, 1999, dismissing Lane's state law claim of outrageous conduct.[1] and the other issued on February 11, 2002, granting summary judgment to the defendants on Lane's ADA claim.[2] This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## I.

The parties both adopted the factual summary set forth in the February 11, 2002 opinion. We do essentially the same and include here the salient facts necessary for our analysis.

Lane has worked as a teacher in Bell County, Kentucky since 1971. In the late 1980s, she took medical leave on two occasions due to "pressure and harassment" by her principal.[3] Following her second leave, the superintendent at the time (Ira Slusher) would not allow her to return to work. In 1990, she filed a federal lawsuit[4] against the Board and Slusher, alleging, under 42 U.S.C. § 1983, that Slusher's refusal to assign her a teaching position constituted retaliation "because of her speech, expressions, associations and affiliations[ ]" and that it caused her to suffer "mental anguish and humiliation[ ]" for which she sought damages in the amount of $100,000, in addition to future lost wages. R. 41, Exh. 8. ¶¶ 9–11. She asserted that this was a denial of a property right (her tenured teaching position) without due process. *Id.,* ¶ 13. In addition to injunctive relief, Lane sought from Slusher alone compensatory damages of $100,000 and punitive damages of $200,000.

In 1992, while the above-described lawsuit was still pending, Lane began receiving treatment for a mental disorder which her psychiatrist. Jean K. Noxon, M.D., eventually diagnosed as post-traumatic stress disorder (PTSD) caused by the stressful working conditions Lane experienced in the late 1980s. Her disorder was marked by disturbed sleep, anorexia, dysphoric mood, fearfulness, headaches, gastrointestinal complaints, severe anxiety with recurrent panic attacks, and difficulty concentrating.

1. This Order had actually dismissed the ADA claim, too; however, upon a motion by the plaintiff for reconsideration of the dismissal, on March 10, 1999, the district court reinstated that claim only. Plaintiff attempted to take an interlocutory appeal (Case No. 99–5292), but this court dismissed the action on June 23, 1999.

2. At oral argument, plaintiff conceded that her Title VII claim was time-barred; therefore, this Court need not address that claim.

3. In answers to interrogatories propounded by the defendants, Lane indicated that her dispute with this principal centered around his policies for marking student attendance. Lane disagreed with the policies and would not follow them. She asserts that she was "pressured and harassed" because of her refusal to comply and ended up taking leaves of absence. The first leave was from September 1988 through December 1988 and the second was for the entire 1989–90 school year. R.28 at 2.

4. The case was filed in the same district court as the instant case. Another teacher who was also not allowed to return after a leave of absence joined Lane as a second plaintiff in this lawsuit.

On May 24, 1994, Lane alone (without her co-plaintiff) entered into a settlement agreement with the defendants. *See* R. 41, Exh. 4. The defendants, without admitting any fault, agreed to pay Lane the total sum of $138,991.00, "which represent[ed] payment of damages on account of personal injuries." *Id.,* at 2. The settlement agreement further provided:

> ... The above sum to be paid to plaintiff is for a full and final settlement of all monetary claims in said litigation, whatever their nature, and Plaintiff does hereby fully and forever release, acquit, and discharge Defendants and their agents, employees, insurers, and representatives of and from any and all monetary claims, demands, judgments, damages, expenses, attorneys' fees and causes of action of whatever kind and nature, asserted or unasserted on account of any and all known and unknown injuries, losses, and damages sustained or received arising out of or in connection with the facts giving rise to the claims, the Complaint, and any amendments thereto or thereof, filed in said litigation.

*Id.*

Lane returned to teaching in Bell County in 1995. In 1996, she was assigned to teach second and third grades at the Yellow Creek Elementary School where she was placed in a classroom that all parties agree was too small for the size of her class. The classroom also had poor ventilation, no windows, and no air conditioning. It was located next to the school's family resource center. As a result, the classroom was so noisy that Lane often had to repeat herself to be heard by her students.

These working conditions interfered with Lane's ability to teach and caused her to become sad. to suffer panic attacks, flashbacks, nightmares, anxiety, diarrhea, and feelings of hopelessness, and to have difficulty concentrating and remembering. She also developed an intense phobia of her classroom and suffered from frequent acute episodes of palpitations, sweating, trembling, smothering, chest pains, nausea, and dizziness.

About two or three weeks after starting at Yellow Creek, Lane informed the principal, Mr. Fitts, that her room was too hot and noisy. She told Fitts she suffered from PTSD and asked if she could be a floating teacher (without a regularly scheduled classroom) or if she could be moved into the family resource center (a slightly larger room that had direct access to windows). She also asked for some help with the heat and the noise in her current classroom. Fitts apparently refused her requests, even though she continued to complain about her working conditions throughout the year. Eventually, Lane informed the school superintendent that she wanted to take a leave of absence pursuant to the Family and Medical Leave Act because the working conditions at her job had exacerbated her PTSD.

On March 27, 1997, the day before Lane was scheduled to take FMLA leave, Fitts informed her that he was dispersing her students to other teachers apparently because of a complaint he received from the mother of one of Lane's students. Fitts informed Lane that she would now be a math and reading teacher in that same room for about twelve students. Lane never assumed that new assignment. however, because her FMLA leave began the next day.[5] Lane has not worked as a

---

5. In answers to interrogatories, Lane stated:
   I felt as if my continuing to try to teach under these circumstances was a "no-win" situation. I would always be subjected to harassment and demeaning responses from the school officials. The entire situation

teacher since March 28, 1997, although she has stated a willingness to do so if the Defendants would accommodate her PTSD.

## II.

### A.

The district court issued two orders, the first dismissing Lane's state law claim of outrageous conduct and the second granting summary judgment in favor of the defendants on Lane's ADA claim.

Our review of both orders of the district court is de novo. *Weiner v. Klais and Co., Inc.,* 108 F.3d 86, 88 (6th Cir.1997) (review of order dismissing claims pursuant to Fed.R.Civ.P. 12(b)(6)); *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991) (review of district court's determination of state law); *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995) (review of grant of summary judgment).

When reviewing the grant of a motion to dismiss, we must construe the complaint in a light most favorable to Lane, accept all of her factual allegations as true, and determine whether she undoubtedly can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "In practice, 'a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436–37 (6th Cir.1988) (*quoting Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)).

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. When considering a motion for summary judgment, "the inferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). However, the adverse party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. *See also Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 578 (6th Cir.2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

### B.

■ In its ruling of February 11, 2002, the district court held that Lane had not established that she had a "disability" within the meaning of the statute. The court stated:

In this case, Lane has identified her impairment as PTSD, and has identified working as the major life activity affected by it. She has not, however, estab-

was similar to the emotional abuse that I had received in the 1980's, and my system could not function under these circum-

stances, and I asked to be taken out of the intolerable conditions.
R.28 at 4–5.

lished that her impairment substantially limited her ability to work. . . .

. . . Since Lane has submitted no . . . evidence showing that her PTSD has substantially limited her major life activity of working, she has not shown that she is "disabled" within the meaning of [42] U.S.C. § 12102(2).

R.50 at 5, 8. The district court, therefore, concluded that the defendants were entitled to judgment as a matter of law on the ADA claim that the defendants had failed to accommodate any disability.[6]

The district court's characterization of plaintiff's claims is exceedingly generous. The complaint *never* mentions PTSD. In fact, the ADA claim set forth in the first cause of action merely describes the conditions under which Lane taught at Yellow Creek Elementary and then alleges that although these conditions caused her "to experience frequent headaches, a lack of concentration, and other symptoms associated with a lack of ventilation and excessive noise[,]" Fitts refused to accommodate her requests for a better classroom. R.1 at 3–4. At best, these paragraphs of the complaint allege that the defendants subjected the plaintiff to environmentally-uncomfortable working conditions that, argu-

ably, gave her headaches and ruined her concentration. The classroom conditions she alleges would be unpleasant for almost anyone and would very likely cause anyone to suffer headaches and loss of concentration. In fact, her complaint seems to allege that not *she*, but her *classroom*, was "disabled."

It was not until her response to the defendants' motion for summary judgment that plaintiff clarified her claim, stating:

> . . . The Plaintiff is actually contending that the Defendants [sic] predecessors working for the Bell County Board of Education caused her disability and that the present Defendant's [sic] failed to accommodate her ongoing disability. (Previous lawsuit brought by Plaintiff. See Exhibit 8).

R. 41 at 3–4. She further characterized her classroom conditions as "stressors" which aggravated a "post traumatic stress disorder from which she is suffering [that] has substantially limited one or more of her major life activities." R. 41 at 4 (citing Aff. of Dr. Noxon).[7] Lane also asserted that the defendants were failing to accommodate her PTSD.[8]

---

**6.** The district court refused to consider any claim that the defendants had caused or exacerbated Lane's PTSD, finding such claim barred by the settlement agreement in Lane's previous lawsuit. *See* discussion *infra* at Section C.

**7.** Dr. Noxon's affidavit, dated February 4, 1999, stated that the doctor "has treated Ms. Lane for a mental disorder characterized by disturbed, decreased sleep, anorexia associated with significant weight loss, dysphoric mood, tearfulness, headaches, gastrointestinal complaints, difficulty concentrating, and severe ongoing anxiety with recurrent panic attacks." R.41, Exh. 2. ¶3. Dr. Noxon declared that this "severe impairment . . . has substantially limited major life activities to the extent that Ms. Lane is no longer able to

perform her chosen profession of teaching, and is in social withdrawal and has decreased daily living activities as compared to the general populace." *Id.*

**8.** Lane specifically argued, in her memorandum in opposition to the motion to dismiss:

> The Plaintiff has established through the previously filed affidavit of Dr. Jean Noxon and the previous lawsuit filed in Federal Court that she has a mental impairment that substantially limits one or more of her major life activities and arguably that through the previous civil suit that she has a record of such impairment. . . . Dr. Noxon had treated the plaintiff since 1992, and was treating her at the time she settled her previous lawsuit against the Defendants. . . . R.41 at 4.

The district court held that the affidavits[9] "merely contain conclusory statements and fail to provide 'specific facts showing that there is a genuine issue for trial' as required under Fed.R.Civ.P. 56(e)." R.50 at 7–8.[10] Plaintiff argues here that it was error for the district court to reject the sufficiency of Dr. Noxon's affidavits. She argues that the affidavits established a material factual dispute with respect to the issue that defendants were raising, namely, that she was not a qualified individual with a disability.

Under the ADA, a person has a "disability" if the individual has, *inter alia*, "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A).

Regulations issued by the EEOC[11] define "substantially limits" as meaning "[u]nable to perform a major life activity that the average person in the general population can perform"; or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform the same major life activity." *See, Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting 29 C.F.R. § 1630.2(j)). "Major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* (quoting 29 C.F.R. § 1630.2(i)).

Whether a person has a disability is an individualized inquiry. *See e.g., Bragdon v. Abbott*, 524 U.S. 624, 641–42, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (declining to find HIV infection a *per se* disability under the ADA); 29 C.F.R. pt. 1630, App. § 1630.2(j) ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of

---

**9.** In addition to the affidavit quoted in note 7, *supra*, Dr. Noxon submitted another affidavit dated February 22, 1999.

**10.** The full text of the district court's reasoning follows:

> The only evidence Lane has submitted that even suggests she is substantially limited in her ability to work comes from two affidavits of her psychiatrist, Jean K. Noxon, M.D. [Record No. 41, Exhs. 2 and 3]. Dr. Noxon avers that Lane's PTSD prevents her from performing "her chosen profession of teaching, and [that she] is in social withdrawal and has decreased daily living activities as compared to the general populace." Dr. Noxon further avers that "the option of teaching in another geographical location has been discussed with Ms. Lane, and it would appear impractical for her to undergo such an adjustment." Dr. Noxon's affidavits, however, merely contain conclusory statements and fail to provide "specific facts showing that there is a genuine issue for trial" as required by Fed. R.Civ.P. 56(e). As a matter of law, Dr.

Noxon's affidavits are insufficient to show that Lane's PTSD has substantially limited her major life activity of working. *Cf. Doren v. Battle Creek Health System*, 187 F.3d 595 (6th Cir.1999). Since Lane has submitted no other evidence showing that her PTSD has substantially limited her major life activity of working, she has not shown that she is "disabled" within the meaning of [42] U.S.C. § 12102(2)....
R.50 at 7–8.

**11.** Although no specific governmental agency has been given authority to interpret the term "disability," *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 480, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the Equal Employment Opportunity Commission (EEOC) has "issued regulations to provide additional guidance regarding the proper interpretation of this term." *Id.* Since both parties in *Sutton* accepted the validity of these regulations, the Supreme Court had no reason to determine what deference to afford them. *See, Sutton*, 527 U.S. at 480. Our situation is the same since no one has challenged the regulations themselves.

the impairment the person has, but rather on the effect of that impairment on the life of the individual.").

There appears to have been no material dispute that plaintiff has a "mental impairment," namely, PTSD, for which she has been treated since March 1992 (even though there is no such allegation in the complaint). The primary issue was whether this impairment substantially limited a major life activity. The parties and the district court seem to have agreed that the major life activity alleged to be substantially impaired was that of "working," even though, again, there is no such allegation in the complaint.

"When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 527 U.S. at 491.[12] The EEOC regulations, when referring to the major life activity of working, define the term "substantially limits" to mean

> "significantly restricted in the ability to perform either a *class of jobs* or a *broad range of jobs in various classes* as compared to the average person having comparable training, skills and abilities. *The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.*"

*Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i) (italics added).[13]

In this case, as noted by the district court. Lane did not submit any evidence tending to show that her PTSD restricts her ability to perform either an entire class of jobs or a broad range of jobs in various classes. The district court pointed out that, although Lane claimed (supported by her doctor's affidavits) that she could no longer teach, she really only submitted evidence to show she could not teach *under the conditions in her particu-*

---

12. In *Sutton*, the Supreme Court made an interesting observation regarding considering "working" to be a "major life activity":

> Because the parties accept that the term "major life activities" includes working, we do not determine the validity of the cited regulations. We note, however, that there may be some conceptual difficulty in defining "major life activities" to include work, for it seems "to argue in a circle to say that if one is excluded, for instance, by reason of [an impairment, from working with others] ... then that exclusion constitutes an impairment, when the question you're asking is, whether the exclusion itself is by reason of handicap." Tr. of Oral Arg. in *School Bd. of Nassau Co. v. Arline*, O.T. 1986, No. 85–1277, p. 15 (argument of Solicitor General). Indeed, even the EEOC has expressed reluctance to define "major life activities" to include working and has suggested that working be viewed as a residual life activity, considered, as a last resort, *only* "[i]f an individual is not substantially limited with respect to *any other* major life activity." 29 CFR pt. 1630, App. § 1630.2(j) (1998) (emphasis added) ("If an

individual is substantially limited in *any other* major life activity, no determination should be made as to whether the individual is substantially limited in working" (emphasis added)).

> Assuming without deciding that working is a major life activity and that the EEOC regulations interpreting the term "substantially limits" are reasonable, petitioners have failed to allege adequately that their poor eyesight is regarded as an impairment that substantially limits them in the major life activity of working.

527 U.S. at 492–93.

13. The *Sutton* Court ultimately determined that its petitioners (twin sisters with severe myopia whose applications to be commercial airline pilots had been rejected by the respondent) did not have substantially limiting impairments because the position of "global airline pilot" was but "a single job," 527 U.S. at 493, and the petitioners had not shown they were precluded from doing other jobs which would utilize their training and skills.

lar room at Yellow Creek Elementary School.

Giving due weight to the affidavits of Dr. Noxon. the district court committed no error in ruling that appellant did not meet her burden of establishing that she is restricted in the major life activity of working. Therefore, her claim that the defendants failed to accommodate her had no merit, there being nothing to accommodate, within the meaning of the ADA.

Finding no error, we affirm the grant of summary judgment to the defendants on the ADA failure-to-accommodate claim.

### C.

■ Lane also argues here[14] that the district court erred when it concluded that her 1994 settlement with the defendants barred her claim that the defendants *caused or exacerbated* her PTSD. In a footnote to the February 11, 2002 ruling on the motion for summary judgment, Judge Caldwell stated:

Lane's claim that working conditions caused or exacerbated her disability is barred by the provisions of the 1994 settlement agreement she signed with the defendants. In 1990, Lane filed a civil action in this Court (Civil Action No. 90–157), alleging that her working conditions at the Bell County school system caused her PTSD. The settlement agreement ultimately reached in that case provided that Lane would be compensated for personal injuries in exchange for a full release of all monetary claims against the defendants and its representatives "on account of any and all known and unknown injuries, losses, and damages sustained or received arising out of or in connection with the facts giving rise to the claims

... filed in said litigation." Lane admits that she suffered from PTSD at the time she signed this settlement. Therefore, her claim that the Defendants are liable to her for causing her PTSD are barred by the unambiguous terms of the 1994 settlement agreement. Additionally, the ADA only prohibits discrimination against disabled individuals. Lane cites no authority for the proposition that it also provides a cause of action for persons claiming their workplace caused or exacerbated a disability.

R.50 at 4. note 3.

When the defendants, in their motion for summary judgment, expressed uncertainty as to whether Lane was claiming that they *caused* her disability or merely failed to *accommodate* it. Lane responded as follows:

... The Plaintiff is actually contending that the Defendants [sic] predecessors working for the Bell County Board of Education caused her disability and that the present Defendant's [sic] failed to accommodate her ongoing disability.

R.41 at 3–4.

Before this Court, plaintiff argues that the district court "clearly erred and/or abused its discretion when it held that the 1994 Settlement Agreement was a bar to Lane's ADA claim." Appellant's Brief at 14.

Plaintiff's arguments are a little difficult to sort out. The district court, however, ultimately determined that plaintiff was precluded by the 1994 Settlement Agreement only from making a claim that her PTSD was *caused by or exacerbated by* her working conditions, but she was not precluded from making an ADA claim that a known disability was not *accommodated* by the defendants by virtue of the fact that

---

**14.** Lane did not raise this argument in her response to the defendants' motion for sum-

mary judgment. However, since the district court addressed it, so will we.

they allegedly refused to respond to her requests to improve the conditions of her classroom. With that distinction in mind, as already discussed in Section B. the district court concluded that no accommodation was necessary since plaintiff did not have a disability within the meaning of the ADA because her PTSD did not prevent her from working in one entire class of jobs or in a broad range of jobs in various classes.

Turning then to the specific question of the preclusive effect of the 1994 Settlement Agreement. we conclude that the district court got it right: plaintiff was precluded from recovering under the ADA on a theory that her employer had caused her to develop a disability and/or had exacerbated her disability. Her earlier lawsuit was not settled until a couple of years after she began treatment for PTSD, a condition that her own treating doctor *directly* attributed to the "stressors" in her workplace which had led to her medical leaves of absence. It was the superintendent's refusal to let her return from her last leave that triggered Lane's lawsuit, in which she alleged that she had suffered significant mental anguish and humiliation for which she sought damages in the amount of $100,000, plus punitive damages of $200,000. Lane eventually agreed to settle her case for a six-figure amount and she signed a sweeping release agreeing that she "does hereby fully and forever release, acquit, and discharge Defendants and their agents, employees, insurers, and representatives of and from any all monetary claims, demands, judgments, damages, expenses, attorneys' fees and causes of action of whatever kind and nature,

asserted or unasserted on account of any and all known and unknown injuries, losses, and damages sustained or received arising out of or in connection with the facts giving rise to the claims" in that lawsuit.

In view of the claims made in her earlier lawsuit and the relief sought, we conclude, as did the district court,[15] that the broad language of the 1994 settlement agreement precluded another ADA claim alleging defendants' action causing or exacerbating any disability she might have connected with the facts surrounding her earlier lawsuit.[16] We, therefore, affirm this ruling of the district court.

### D.

█ Lane also asserts that the district court erred by dismissing her state common law claim of outrageous conduct. Although her brief on this issue is not particularly clear, Lane seems to argue that the district court abused its discretion by dismissing the claim without first allowing her an opportunity to weigh in on the subject. Defendants filed a combined motion to dismiss and answer. When the time had passed for plaintiff's response with none being filed, the district court granted the motion. Then plaintiff moved for reconsideration and the district court *did* reinstate the ADA claim, but not the other claims.

Lane argues that the district court abused its discretion by treating the motion to dismiss as a motion for judgment on the pleadings, by failing to give her a reasonable opportunity to conduct discov-

---

**15.** Lane's answers to interrogatories propounded by the defendants in the instant case further support the conclusion that the notion of *causing* her PTSD has already been litigated by way of settlement in her previous lawsuit. *See* note 5, *supra*.

**16.** We note that, even if the district court had considered any such claim, it probably would not have found liability, given its conclusion, which we have found to be correct, that Lane was not "disabled" within the meaning of the ADA.

ery to overcome defendants' motion, by failing to allow her to prove facts in support of her claim, and by failing to draw all reasonable inferences in her favor. Appellant's Brief, at 16, 18.

The district court noted that "Kentucky courts have held that the tort of outrage is not actionable unless the defendant acts with the sole purpose of causing extreme emotional distress in the plaintiff." R.7 at 4–5 (citing *Gross v. Citizens Fidelity Bank–Winchester,* 867 S.W.2d 212 (Ky.Ct. App.1993); *Rigazio v. Archdiocese of Louisville,* 853 S.W.2d 295 (Ky.Ct.App. 1993)). Since plaintiff made no such allegation, she failed to set forth a critical element of the claim. Nor had she alleged or made a showing that defendants' actions were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." R.7 at 5 (quoting *Humana v. Seitz,* 796 S.W.2d 1, 3 (Ky.1990)). With respect to this count, the district court ultimately concluded that "the plaintiff fails to state any facts that would permit her to relief [sic] under the tort of outrageous conduct[.]" *Id.*

The sufficiency of a complaint is a question of law, *Dugan v. Brooks,* 818 F.2d 513, 516 (6th Cir.1987), and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987). In her complaint, plaintiff merely alleged that defendants "failed to provide [her] with a safe work environment" and that this "outrageous conduct caused [her] to suffer severe emotional distress[.]" R.1 at 5–6, ¶¶ 18, 19. Although she alleged that she "has been damaged and ... caused ... to be unable to engage in her job as a teacher[,]" *Id.* at 6, ¶ 23, she never alleged that defendants

had the "sole purpose of causing [her] extreme emotional distress[.]"

We find no error in the district court's dismissal of this count.

## III. CONCLUSION

For the reasons set forth above, we AFFIRM the district court's rulings.