**Frank HOWARD, Jr. Plaintiff,**

v.

**DAIMLERCHRYSLER CORP. and Fred Martino–DiCicco, Defendants.**

No. 03–71343.

United States District Court, E.D. Michigan, Southern Division.

Oct. 20, 2003.

Keith T. Murphy, Clarkston, MI, for Plaintiff.

Lawrence J. Murphy, Kalamazoo, MI, for Defendant.

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

DUGGAN, District Judge.

Plaintiff Frank Howard, Jr. ("Plaintiff") filed this lawsuit against Defendants DaimlerChrysler Corporation ("DaimlerChrysler") and Fred Martino–DiCicco ("Martino–DiCicco")(collectively "Defendants") on April 4, 2003.[1] Plaintiff alleges five counts against DaimlerChrysler: three counts of race discrimination in violation of Title VII

---

1. Martino–DiCicco is a DaimlerChrysler employee, although it is not clear from Plaintiff's Complaint or any other pleadings what position he holds.

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Section 2000e; one count of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Sections 621–634; and one count of disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. Sections 12101–12213. Plaintiff alleges five counts of race discrimination in violation of federal law against Martino–DiCicco. Now before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment. A hearing on Defendants' motion was held on October 8, 2003.

Defendants seek dismissal of Plaintiff's Complaint claiming that his lawsuit is barred by a Settlement and Release Agreement that Plaintiff and Daimler-Chrysler executed on December 6, 2002. Defendants also argue that Plaintiff's claims are barred because he failed to exhaust his administrative remedies. Finally, Defendants assert that Plaintiff's claims against Martino–DiCicco should be dismissed because neither Title VII, the ADA, nor the ADEA permit lawsuits against individuals who are not "employers." For the reasons that follow, Defendants' motion is granted.

**Factual and Procedural Background**

Plaintiff is an African–American who turned fifty-five years of age during the incidents that form the basis of his lawsuit. He began working for DaimlerChrysler as an assembler in June 1966, and was subsequently promoted to the position of Area Manager at DaimlerChrysler's Warren Truck Assembly Plant ("the plant"). Plaintiff was an Area Manager at the plant during the incidents relevant to this lawsuit.

On July 13, 2001, Plaintiff received a five-day suspension without pay based on a grievance filed by a fellow employee, Precious McCoy ("McCoy"). Plaintiff claims that prior to suspending him, Daimler-Chrysler failed to conduct an investigation into McCoy's claims, including failing to give Plaintiff an opportunity to respond to the claims. According to Plaintiff, he was in line to receive a promotion to first shift maintenance at the plant prior to McCoy's complaint, but was denied the position because of her charge. Plaintiff contends that a white, younger, less experienced male received the first shift maintenance position instead.

Plaintiff contends that in February 2002, he again was suspended for an incident that DaimlerChrysler failed to properly investigate. At this time, DaimlerChrysler suspended Plaintiff for ten days without pay for his confrontation with a white employee, Jamie Henrion. Plaintiff denied Henrion's allegations and complains that he was never given the opportunity to respond to his charges, to identify potential witnesses, or to be involved in any investigation of Henrion's complaint.

Around this time period, Plaintiff claims that "agents of [DaimlerChrysler]" frequently told him that he was close to retirement, even though he had not yet indicated to anyone that he planned to retire. Plaintiff claims that as these comments increased, his supervisors assigned a white manager that works a different shift rather than the black manager to whom Plaintiff reports- to conduct Plaintiff's performance review. According to Plaintiff, this white manager gave him a lower review than he had received in previous years. Plaintiff believes that this manager also gave other older, African American area managers on the second shift lower evaluations than they previously had received.

On May 14, 2002, Plaintiff filed a Charge of Discrimination against DaimlerChrysler with the Equal Employment Opportunity Commission ("EEOC"). In his EEOC charge, Plaintiff claimed that Daimler-Chrysler discriminated against him based

on his race and age. Specifically, Plaintiff referred to his suspension in February, 2002. Plaintiff complained that no investigation was performed to determine the validity of the white employee's claims against him. Plaintiff also complained about the references to his age and upcoming retirement and his recent lower evaluation by a white supervisor. In August, 2002, Plaintiff filed an amended Charge of Discrimination with the EEOC in which he cited his July 2001 suspension as a result of McCoy's complaint as a further example of DaimlerChrysler's discriminatory conduct. As in his earlier charge, Plaintiff claimed that DaimlerChrysler discriminated against him based on his race and age.

In the Summer of 2002, Plaintiff took a medical leave of absence due to his diabetes. He contends that when he returned to work in July 2002, comments concerning his age and upcoming retirement increased. Plaintiff contends that this leave of absence, his "disability," his age, and his race ultimately led DaimlerChrysler to terminate him on November 18, 2002.

Four days before he was terminated, Plaintiff received a letter from the EEOC in which the agency stated that it was discontinuing its investigation into Plaintiff's charges of discrimination. According to the EEOC, it found no evidence at that point to support a finding that DaimlerChrysler had violated Title VII or the ADEA. The EEOC further informed Plaintiff that he would have ninety days upon receipt of its Dismissal and Notice of Rights to proceed with his allegations in court.

Four days later, on November 18, 2002, DaimlerChrysler sent Plaintiff a letter indicating that he was being terminated based upon his two previous suspensions and a recent complaint filed by fellow employee Kenyon Harper ("Harper") concerning an incident on July 16, 2002. Plaintiff claims that, as with the previous complaints against him, DaimlerChrysler failed to investigate Harper's claims. According to Plaintiff, DaimlerChrysler did not give him the opportunity to present his side of the story and did not interview two witnesses to the incident.

Plaintiff's attorney, Plaintiff's counsel in the pending matter, subsequently contacted DaimlerChrysler to discuss Plaintiff's termination. Plaintiff's counsel and DaimlerChrysler negotiated a "Settlement and Release Agreement" (the "Agreement"), which DaimlerChrysler sent to Plaintiff's counsel on November 26, 2002. Plaintiff signed the Agreement on December 6, 2002, and his attorney sent it by facsimile to DaimlerChrysler on the same date. Pursuant to the Agreement, DaimlerChrysler agreed to change Plaintiff's personnel records which reflected that he was terminated due to misconduct to state that he voluntarily retired, effective November 30, 2002. DaimlerChrysler also agreed to grant Plaintiff certain benefits, including health care and pension benefits, that he otherwise would not have received.

In exchange for these benefits, Plaintiff agreed to a "Release of Claims" provision in the Agreement which provided:

> In consideration of the promises made by DaimlerChrysler above, Howard hereby releases, acquits and forever discharges DaimlerChrysler, its respective officers, directors, agents, employees ... (all collectively, the "Released Parties"), from (i) any and all claims, demands, suits, actions and causes of actions whatsoever, whether known or unknown, foreseen or unforeseen, suspected or unsuspected, in law or in equity, and (ii) any and all liabilities, damages, interest, attorneys' fees and costs, that he has or may at any time hereafter have against the Released Parties by reason of any matter, cause or thing

related to or connected with his employment with, or separation from, DaimlerChrysler and which occurred before the date he signs this Agreement. Claims for benefits or compensation provided in and subject to this Agreement are excluded from this release.

*See* Decl. of Gregory Purtell, Ex. A at 1–2. As examples of claims Plaintiff agreed to release, the Agreement refers to "all claims purporting to be violations of any state or federal statutes or common law, including, but not limited to, the civil rights laws of the United States, including [the ADEA and the Civil Rights Act of 1991]." *See id.* at 2. The Agreement provided that Plaintiff had twenty-one days to read and review its terms and it advised Plaintiff to consult with an attorney. *See id.* The Agreement also gave Plaintiff seven days from the date he executed the Agreement to revoke his acceptance and stated that the Agreement would not become valid until this revocation period expired.

When Plaintiff's counsel faxed the signed Agreement back to DaimlerChrysler, he hand-wrote a brief note on a cover sheet indicating that Plaintiff only had been paid through November 18, 2002, not November 30.[2] DaimlerChrysler believed that it did not owe Plaintiff his salary for this two week period, but agreed to pay him if he agreed to execute a second Settlement and Release Agreement. Plaintiff never signed the document. On December 27, 2002, the EEOC sent Plaintiff a Dismissal and Notice of Rights letter.

## Standard for Summary Judgment [3]

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. 2505.

The Court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is

---

**2.** Plaintiff's counsel wrote, in relevant part, "Mr. Howard has not been paid thru 11/30/02, just thru 11/18/02. We assume that this will be rectified."

**3.** Defendants file their motion as either a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or as a motion for summary judgment pursuant to Rule 56(c). As Defendants and Plaintiff present matters outside the pleadings, the Court will treat Defendants' motion as one for summary judgment. *See* FED. R. CIV. P. 12(b).

whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the Plaintiff or the defendant." *See id.*

## Whether Plaintiff's Claims are Barred by the Settlement and Release Agreement

■ The Sixth Circuit Court of Appeals has held that employers and employees may negotiate a valid release of ADEA, Title VII, and ADA claims. *Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995)(citing *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039, 1044 (6th Cir.1986)(dismissing Title VII and ADEA claims)); *Lane v. Bell County Bd. of Educ.*, 72 Fed.Appx. 389, 2003 WL 21949188, *5 (6th Cir.2003)(unpublished opinion)(finding ADA claims barred); *Parker v. Key Plastics, Inc.*, 68 F.Supp.2d 818, 825–26 (E.D.Mich.1999)(dismissing ADA and Title VII claims). Releases are enforceable if they are determined to have been "knowingly and voluntarily executed." *Adams,* 67 F.3d at 583.

■ To determine the validity of Title VII and ADA waivers, the Sixth Circuit instructs courts to apply ordinary contract principles. *Runyan,* 787 F.2d at 1044–45. Courts should consider the following factors to make this assessment: (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances. *Id.* (citations omitted). Codifying some of these considerations, Congress has set forth certain minimum requirements to find a waiver of an employee's ADEA rights knowing and voluntary. These requirements, as applicable to this case, include:

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(B) the waiver specifically refers to rights or claims arising under this chapter;

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) (i) the individual is given a period of at least 21 days within which to consider the agreement;

. . . . .

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired . . .

29 U.S.C. § 626(f). Looking at these minimum requirements and applying ordinary contract principles, the Court finds that Plaintiff knowingly and voluntarily released his ADEA, ADA, and Title VII claims by executing the December 6, 2002 Settlement and Release Agreement.

Although there is no evidence indicating Plaintiff's education, background, and complete work experience, he was an Area Manager at the plant with supervisory responsibilities. The Agreement is plain, straightforward, and unambiguous and it is easily understandable by someone in Plain-

tiff's position or at least by an individual with minimal assistance of counsel. With respect to the rights Plaintiff agreed to waive, the Agreement specifically refers by example to Plaintiff's rights under Title VII and the ADEA and only those rights or claims "which occurred before the date [Plaintiff] signs this Agreement." Under the terms of the Agreement, Plaintiff undoubtably received consideration to which he otherwise would not have been entitled, most notably retirement benefits. Not only did the Agreement advise Plaintiff to consult with an attorney, Plaintiff in fact was represented by counsel during its negotiation and execution. The Agreement informed Plaintiff that he had twenty-one days to consider its terms and that he could revoke the agreement within seven days of its execution. Finally, the Agreement only became valid after this revocation period expired.

Plaintiff now contends that he "panicked" and entered the Agreement because he was fifty-four years old, had worked for DaimlerChrysler since 1965, and was only approximately four years away from retirement. Plaintiff also now claims that there was no "meeting of the minds" when he and DaimlerChrysler executed the Agreement, as evidenced by the dispute that subsequently arose as to whether he was entitled to his salary from November 18 through November 30, 2002. Because Plaintiff never signed the second Release and Settlement Agreement that Daimler-Chrysler sent him to address this issue, he now claims that no valid agreement was ever signed.

Plaintiff's age, years at DaimlerChrysler, and length of time until retirement do not convince the Court that he signed the Agreement under duress. If anything, these factors indicate that Plaintiff knowingly and voluntarily entered into the Agreement in order to avoid losing his retirement benefits as a result of his termination for misconduct. Plaintiff understood the implications of the Agreement, but he decided to accept those implications in exchange for benefits to which he otherwise would not have been entitled. In fact it became evident to the Court at the hearing on Defendants' motion, that Plaintiff now is trying to get out of the Agreement merely because (as Plaintiff's counsel informed the Court) "to his mild surprise, [he] finds a job and lands on his feet and gets his medical situation stabilized and he changes his mind . . ."

Plaintiff's claim that there was no meeting of the minds is not persuasive. The consideration DaimlerChrysler provided Plaintiff under the Agreement is clearly set forth and in no way is Plaintiff's salary addressed. The fact that Plaintiff subsequently sought his salary from November 18 to November 30, does not nullify the terms of the parties' signed Agreement.[4] Furthermore, despite any disagreement over these two weeks of salary, Plaintiff accepted (and continues to accept at this time) the benefits from DaimlerChrysler set forth in the Agreement. Plaintiff's acceptance of these benefits further supports this Court's finding that he viewed the Agreement as a binding contract between the parties.

### Whether Martino–DiCicco Can Be Held Personally Liable under Title VII, the ADA, and the ADEA

The Sixth Circuit Court of Appeals has rejected the concept of individual lia-

---

4. It is not clear to the Court why Daimler-Chrysler sent Plaintiff a new agreement to address his request for the two weeks pay. As Defendants' counsel acknowledged at oral argument, a reasonable reading of the first agreement entitles Plaintiff to that amount. At the hearing, Defendants acknowledged that Plaintiff was entitled to pay for the period November 18 to November 30 and agreed to pay Plaintiff for that period. .

bility under Title VII, the ADA, and the ADEA. *See Wathen v. Gen. Elec. Co.,* 115 F.3d 400, 404–05 (6th Cir.1997)(interpreting Title VII but also finding the liability schemes under Title VII, the ADEA, and the ADA essentially the same in aspects relevant to this issue); *Sullivan v. River Valley Sch. Dist.,* 197 F.3d 804, 808 n. 1 (6th Cir.1999)(interpreting ADA); *see also Smith v. Lomax,* 45 F.3d 402, 403 (11th Cir.1995)(holding that employees cannot be liable under the ADEA or Title VII); *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 588 (11th Cir.1993)(same). This is the view of the majority of Circuit Courts and the district courts within the Sixth Circuit. *See Wathen,* 115 F.3d at 404. Thus the Court concludes that Martino–DiCicco cannot be held personally liable under these statutes.

**Whether Plaintiff has Exhausted His Administrative Remedies**

■ Under Title VII, the ADA, and the ADEA, before filing a complaint in the district court, a plaintiff must exhaust his or her administrative remedies by filing a charge of discrimination with the EEOC or the appropriate state agency and receiving a Notice of Right to Sue. 29 U.S.C. §§ 626(d)-(e); 42 U.S.C. §§ 2000e-5(e)-(f); 42 U.S.C. § 12117. "Federal courts do not have subject matter jurisdiction [of such claims] unless the claimant explicitly files the claim[s] in an EEOC charge or the claim can reasonably grow out of the EEOC charge." *Jones v. Sumser Ret. Vill.,* 209 F.3d 851, 853 (6th Cir.2000)(quoting *Abeita v. TransAmerica Mailings, Inc.,* 159 F.3d 246, 254 (6th Cir.1998)). The claimant's EEOC charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Id.*

■ Plaintiff clearly has not exhausted his administrate remedies with respect to his ADA claim. In filing his charge of discrimination with the EEOC, Plaintiff never checked the box for "disability." Furthermore, in describing the alleged discrimination in his EEOC charge, Plaintiff refers only to his race and age as the motivations for the discrimination and claims that the discrimination took place in July 2001 and February 2002. Plaintiff's EEOC charge could not possibly refer to his claims of disability discrimination as he claims in the Complaint that such discrimination only occurred following his return from a medical leave of absence in the Summer of 2002.

■ Plaintiff's EEOC charge also fails to mention the July 16, 2002 complaint against him or his termination on November 18, 2002. At no time did Plaintiff seek to amend his charge to include these incidents. A plaintiff may seek relief for discriminatory acts not set forth in his or her EEOC charge, however, if the acts "are reasonably related to that charge, and they occur while the charge is pending before the EEOC." *Dosier v. Miami Valley Broad. Corp.,* 656 F.2d 1295, 1300 (9th Cir.1981). While the July 16, 2002, alleged incident of discrimination occurred while Plaintiff's EEOC charge remained pending and arguably is reasonably related to the charge, Plaintiff's termination occurred four days after the EEOC sent Plaintiff a letter indicating that it had discontinued its investigation.

Accordingly,

**IT IS ORDERED,** that Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment is **GRANTED.**