Carol E. ANDERSON, et al., Plaintiffs

v.

PINE SOUTH CAPITAL, LLC, et al Defendants

No. 3:98CV–739–S.

United States District Court, W.D. Kentucky, at Louisville.

Aug. 8, 2001.

---

Dorothy M. Pitt, Pitt, Fenton & Smith, Louisville, KY, Vicki L. Buba, Stone, Pregliasco, Haynes & Buba, Louisville, KY, for all plaintiffs and for intervenor plaintiff Home Healthcare Management and Trustee John Wilson.

Maureen P. Taylor, Frost, Brown & Todd, Louisville, KY, Richard Paul Schiller, Schiller, Osbourn & Barnes, Louisville, KY, Drew H. Campbell, Bricker & Eckler, LLP, Columbus, OH, for National Century Financial Enterprises, Inc. and Lance Paulsen.

Richard W. Beckler, Matthew H. Kirtland, Michelle C. Ciszak, Fulbright & Jaworski, LLP, Washington, DC, for Meds-

hares Consolidated, Inc., Medshares Management Services, Inc. and John Koch.

Michael D. Risley, Stites & Harbison, Louisville, KY, Richard W. Beckler, Matthew H. Kirtland, Michelle C. Ciszak, Fulbright & Jaworski, LLP, Washington, DC, for Stephen Winters.

Douglas C. Ballantine, John T. Ballantine, Ogden, Newell & Welch, Louisville, KY, Gene Lynn Humphreys, Bass, Berry & Simms, Nashville, TN, Hayden J. Silver, III, Kilpatrick & Stockton, LLP, Atlanta, GA, P. Stephen Gordinier, Louisville, KY, Emily A. Moseley, Kilpatrick & Stockton, Raleigh, NC, for William Riddle, Jr., Dean. Holland, James J. Terbeest, Leanne Barney and Nelson Clemmens.

Joan Lloyd Cooper, Barbara Wetzel Gernert, Wyatt, Tarrant & Combs, Louisville, KY, for Trans Financial Bank, NA.

Samuel G. Bridge, Jr., Wyatt, Tarrant & Combs, Louisville, KY, for First Allmerica Financial Life Ins. Co.

### *MEMORANDUM OPINION*

SIMPSON, Chief Judge.

This matter is before the Court on the motions of certain Defendants to dismiss for failure to state a claim against them upon which relief can be granted. For the reasons stated below, we will grant the motions in part and deny them in part.

### BACKGROUND

This case arises out of the financial difficulties of Homecare and Hospital Management, Inc.,[1] ("HHM"), which is currently involved in bankruptcy proceedings in this district. There are two complaints.

Claims of certain former employees of HHM and its subsidiaries ("Employees") are set forth in the Second Supplemental Complaint. HHM's Trustee in Bankruptcy ("Trustee") has also filed the Intervening Complaint. Both complaints recite largely overlapping factual allegations, although they allege distinct causes of action.

The Employees have alleged that they were enticed by some of the Defendants to remain with HHM during its financial difficulties by fraudulent promises that their wages and benefits would be paid. They further allege that remaining Defendants aided the fraudulent scheme and financially benefitted.

The Trustee has alleged that two of the Defendants reneged on a promise to provide funding to HHM, that certain Defendants breached their fiduciary duties to HHM, and finally, that HHM's assets were converted by all Defendants.

### DISCUSSION

In determining a motion to dismiss under Fed.R.Civ.P. 12(b)(6), we must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996) (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir.1994)). The Sixth Circuit expounded on this standard in the case of *Andrews v. Ohio,* 104 F.3d 803 (6th Cir. 1997).

> This Court must ... determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. A complaint

---

1. The two complaints, prepared by the same counsel, alternatively refer to this corporation as "Home Healthcare Management" and "Homecare and Hospital Management, Inc."

We use the latter title because it is the one used by the other parties and the bankruptcy court.

need only give "fair notice of what plaintiff's claim is and the grounds upon which it rests." A judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations. While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."

*Id.* at 805 (quoting *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993))(internal citations omitted).

## I. *Employees' Claims*

### A. Standing

The Trustee has the exclusive right to pursue any claim that could have been raised by HHM prior to bankruptcy. *Honigman v. Comerica Bank,* 128 F.3d 945, 947 (6th Cir.1997). This principal does not prevent the Employees from bringing claims which are independent of the rights of HHM, but it informs our reading of their complaint. The Employees have standing to assert claims for direct injuries to themselves, but may not assert claims for injuries to HHM.

### B. ERISA Preemption

■ To the extent that a state law claim arises out of an employer's refusal to make payments to a benefit plan, it is preempted by ERISA. 29 U.S.C. § 1144(a); *Tassinare v. American National Ins. Co.*, 32 F.3d 220, 224 (6th Cir.1994)(holding claim for intentional infliction of emotional distress caused by employer's refusal to make matching payments preempted). The only remedy must come from ERISA itself.

Thus, the Employees' fraud and intentional interference with contractual rela-

tions claims are preempted by § 1144(a) to the extent that they request damages (or equitable relief) for payments that allegedly should have been made to ERISA covered plans. However, to the extent that these claims allege that the Defendants are responsible for salaries and other non-ERISA payments, they are not preempted.

### C. Fraud

The Defendants move for dismissal of the Employees' fraud claims against them. They argue that the complaint fails to allege facts which state a claim for fraud and that it fails to state these facts with sufficient particularity. In response, the Employees point to certain paragraphs of the complaint in which they contend that the claims of fraud are particularized.

■ In order to satisfy Rule 12(b)(6), the Employees must allege facts supporting the elements of fraud, which are: "(a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury." *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky.App.1978).

■ Also, Fed.R.Civ.P. 9(b) requires that "the circumstances constituting fraud ... shall be stated with particularity." The purpose of this rule is to provide fair notice to defendants to allow them to respond on an informed basis. *Advocacy Org. for Patients and Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir.1999), *cert. denied,* 528 U.S. 871, 120 S.Ct. 172, 145 L.Ed.2d 145 (1999). A plaintiff must allege the time, place, and content of the misrepresentation on which he or she relied, the fraudulent scheme, the intent of the defendants, and the resulting injury. *Id.* (citing *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir. 1993)). When the complaint involves mul-

tiple defendants, then "each defendant's role must be particularized with respect to their alleged involvement in the fraud." *Kuney Int'l S.A. v. DiIanni,* 746 F.Supp. 234, 237 (D.Mass.1990)(citing *Wayne Inv. v. Gulf Oil Corp.,* 739 F.2d 11, 14 (1st Cir.1984)). However, averments regarding the condition of defendants' minds can be made generally. Rule 9(b).

The complaint is fulsome to the point of being verbose. There are forty-four paragraphs of generalized factual allegations. With respect to fraud, there are an additional forty-four lengthy paragraphs of allegations. Plodding through this factual morass is extremely difficult. Therefore, we have paid particular attention to the paragraphs upon which the Employees rely in their responsive brief as constituting the crux of their claims.

Paragraph 19 is a generalized allegation against Defendants William Riddle, Jr. ("Riddle"), Dean Holland ("Holland"), and James J. TerBeest ("TerBeest") setting forth the alleged fraudulent scheme. It alleges that these Defendants made promises to the Employees to induce them to remain with HHM through a transition period even though the Defendants did not plan to fulfill these promises. The remaining paragraphs, then, appear to be the Employees' attempt to specify and particularize the general averments in this paragraph.

■ Paragraph 30 amplifies the allegations in ¶ 19 with respect to Riddle and Holland but does not particularize the time, place or manner of the alleged misrepresentations. Paragraph 37 is similar, but it adds an allegation that Riddle, Holland, TerBeest, and Nelson Clemmens ("Clemmens")[2] were aware that the employees would not be paid as promised.

Further, it includes a generalized allegation that the remaining Defendants "approved and/or ratified" these misrepresentations. However, as it relates to Clemmens and the remaining Defendants, this paragraph contains no particularized allegations which could support a claim for fraud.

■ Paragraph 58 alleges, "Riddle sent a letter to corporate Employees informing them that 'everything is fine' and that HHM would honor all of its financial commitments." The statement that "everything is fine" is not a material representation and is not actionable. However, the assertion that HHM would honor its financial commitments is a material representation. Although it relates to future events, the Employees have alleged that the Defendant made it with the knowledge that they would not perform so as to induce the Employees into continuing their employment. This is enough to state a claim for fraud against Riddle. *Schroerlucke v. Hall,* 249 S.W.2d 130, 131 (Ky. 1952)(Fraud exists where one makes a "false representation of an existing intention to do certain things, made for the purpose of inducing another to enter into a contractual relation with him.").

Additionally, the allegation satisfies Rule 9(b). It suffers slightly from a lack of specificity regarding the content of the fraudulent statement. However, because the statements were contained in a letter which is identifiable, we find that it presents enough information to permit Riddle to respond intelligently to the charges.

Paragraph 63 contains an allegation that Riddle continued to make representations to the Employees that HHM would pay its debts to them. It does not, however, pro-

---

2. Again, the Plaintiffs, in their complaints, alternatively spell this name "Clemmens" and "Clemmons." We use the former spelling because that is the one used by his counsel.

vide the time, place or manner of this additional representations.

■ Paragraph 72 alleges that Riddle, TerBeest, and Holland sent a memo to the Employees which "implied that all obligations to Employees would be met." This paragraph, however, does not set forth the contents of the memo or indicate how this assertion was "implied." Whether HHM would meet its financial obligations is a material issue. However, this allegation does not present us with a "representation," and thus, it fails to establish one of the necessary elements of a fraud claim. Further, the Employees, in this paragraph, have set forth the time and place of the memo, but have failed to set forth its contents relative to the misrepresentation so that the Defendants can respond intelligently. Therefore, it also fails to satisfy Rule 9(b).

■ Paragraph 74 asserts that Riddle sent a letter to the Employees on May 1, 1998 which reassured them that "employee ... issues would be resolved." (Sec.Supp. Compl.¶ 74.) This representation is somewhat ambiguous in that it only implies that (1) financial obligations to the Employees will be resolved (2) favorably. However, an ambiguous representation can be the basis for a fraud claim if it is made "with the intention that it be understood in the sense in which it is false." Restatement (Second) of Torts, § 527. According to the Employees' complaint, these financial obligations were not fully paid, and Riddle intended that the Employees be misled into believing that they would be paid. Therefore, this paragraph states a claim for fraud against Riddle.

Paragraph 74 further alleges, "The representations were made at the direction of or with the approval and/or ratification of" the remaining Defendants. This allegation is broad and conclusory and does

not begin to satisfy the requirements of Rule 9(b) as it relates to these Defendants.

■ Paragraph 77 alleges that Riddle, Holland, and TerBeest held meetings with the Employees in which they assured Employees that money had been accrued to satisfy all of HHM's obligations through and including the month of June, 1998. These assurances were made in conjunction with a memo sent by Riddle to the Employees on May 14, 1998. Whether HHM had accrued money for June's obligations was a present material fact. Also, this paragraph provides sufficient particularization of the time, place, content, and manner of these representations so that the these Defendants can intelligently respond.

Again, this paragraph alleges generally that the remaining Defendants approved or ratified the statements of Riddle, Holland, and TerBeest. There are, however, no particularized factual allegations indicating each Defendants' role in making, or in aiding and abetting the making of these representations. Therefore, with respect to these Defendants, these allegations do not satisfy Rule 9(b).

■ Paragraph 81 alleges that Riddle, TerBeest or Holland assured Employees that new medical plan coverage would be retroactive to April 28, 1998. They did this, allegedly, despite knowledge by another Defendant, Leigh Ann Barney ("Barney"), that it was "doubtful" that coverage could be made retroactive to April 1, 1998. This claim, as it seeks damages related to HHM's failure to make payments to an ERISA plan, is preempted. *See supra,* Section I.B.. Even if it were not preempted, this allegation does not state the manner or place of the representation and only specifies that the time of the representation was "shortly [ ]after" a memo which was prepared on or about May 27. This,

too, is insufficiently particular under Rule 9(b).

Paragraph 87 only realleges the fraudulent scheme generally. Neither it nor any of the other paragraphs in the complaint contain particularized factual allegations which would inform the Defendants, other than Riddle, Holland and TerBeest, of their alleged role in fraudulent misrepresentations or satisfy all of the elements for aiding and abetting a misrepresentation.

After carefully analyzing the paragraphs singled out by the Employees and reviewing all of the allegations of the complaint, we find that the Employees have sufficiently alleged a claim of fraud against Defendants Riddle, Holland, and TerBeest in ¶¶ 58, 74, and 77. With respect to the remaining Defendants, the Employees have not alleged facts which state a claim for fraud and have failed to particularize their allegations in order to satisfy Rule 9(b).

### D. Intentional Interference with Contractual Relations

 Defendants National Century Financial Enterprises, Inc. ("NCFE"), Lance Poulsen ("Poulsen"), and Stephen Winters ("Winters")[3] contend that the Employees have failed to state a claim for intentional interference with contractual relations because they have not alleged malice or knowledge of the employment contracts on the part of the Defendants, because the Employees have not alleged causation, and because this claim is preempted by ERISA.

We reiterate that the Employees' state-law based claims for ERISA covered benefits are preempted. *See,* Section I.B., *supra.* The Employees have alleged that their contractual relationship with HHM entitled them to "payments/benefits." (Sec.Supp.Compl.¶ 131.) Thus, to the extent that the Employees complain for "benefits" which were owed to ERISA covered plans, the Employees have failed to state a claim upon which relief can be granted. That portion of the Employees' claim for intentional interference with contractual relations must be dismissed. However, the complaint includes a claim for contractual "payments" which may not be preempted and, therefore, requires further examination.

In arguing that the Employees must allege malice, the Defendants overstate the elements of this tort. The Employees are only required to allege that the interference was done without justification. *See Thermothrift Industries, Inc. v. Mono–Therm Insulation Systems, Inc.,* 450 F.Supp. 398, 404 (W.D.Ky.1978)(interference must be "malicious or without justification"). The Employees claim, throughout the complaint, that these Defendants were motivated by a desire to loot a dying corporation. This is sufficient to allege that there was no justification for the interference. *But cf. Foster v. Churchill,* 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 157 (1996)("To the extent that respondents acted to preserve the financial health of an ailing [corporation], their actions were economically justified.").

The Employees have also alleged that HHM breached its contracts with them at "the encouragement/insistence of" the Defendants. (Sec.Supp.Compl.¶ 132.) This allegation satisfies the element of causation. Further, the Employees allege that

**3.** The only Defendants named in this count of the Employees' complaint are Medshares Condolidated, Inc. ("Medshares"), Medshares Management Services, Inc. ("MMSI"), NCFE, Poulsen, and Winters. Medshares and MMSI are currently in bankruptcy, and the parties have agreed that the action against them is stayed. Thus, only NCFE, Poulsen, and Winters have addressed this count of the Employees' complaint.

the Defendants encouraged and insisted "that monies due Employees not be paid" and that they intentionally interfered with the contractual relationship between the Employees and HHM. (*Id.*) A reasonable inference from these allegations is that these Defendants knew of the alleged contracts. Therefore, the Employees have stated a claim upon which relief may be granted.

### E. RICO

■ In Count II, the Employees also allege that the Defendants formed an enterprise for the purposes of diverting HHM's assets for their own gain. They claim that this enterprise engaged in a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c).

We find that this count of the Employees' complaint must be dismissed under Rule 12(b)(6) because the Employees have failed to allege sufficient facts to satisfy the 'continuity' requirement of RICO claims. *See H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). This requirement ensures that RICO suits only address "Congress's primary concern in enacting the statute, i.e. long-term criminal conduct." *Vemco v. Camardella,* 23 F.3d 129, 134 (6th Cir.1994). To satisfy this requirement, the Employees must allege "a series of related predicates extending over a substantial period of time" or demonstrate a "threat of continuity." *H.J.,* 492 U.S. at 242, 109 S.Ct. at 2902. However, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement . . . ." *Id.*

The Employees' complaint alleges that this fraudulent enterprise was formed in April, 1998. (Sec.Supp.Compl.¶ 21.) The complaint also alleges that several of the Defendants exchanged a fax on October 9, 1998 which was "in furtherance of the goals of the Enterprise, . . . ." (*Id.* at ¶ 104.) There are no allegations of fraudulent acts after October, 9, 1998, (*Id.*), and there is only one allegation of a fraudulent act after July 3, 1998, (*Id.* at ¶ 86). Assuming that these paragraphs satisfy Rule 9(b) and allege fraudulent activity, the entire conspiracy could not have lasted more than six months.

The Sixth Circuit has held that, when the Defendants are engaged in a singular fraudulent scheme, a period of seventeen months is not enough to satisfy the continuity requirement. *Vemco,* 23 F.3d at 134. In this case, there are significantly more alleged victims than there were in *Vemco,* but all of them belong to the same class, employees of HHM and its subsidiaries. They were allegedly defrauded by the same statements which were all apart of the same scheme, looting HHM. Also, the scheme could only last until HHM went bankrupt which amounts to a short-term, close-ended scheme. *See Thompson v. Paasche,* 950 F.2d 306, 311 (6th Cir.1991)(holding that land sale scheme was too short-term to satisfy RICO).

The Plaintiffs failed to cite, and we have not uncovered, any cases which find that a six month conspiracy is sufficient to satisfy the continuity requirement of RICO. Therefore, we find that, given the limited scheme and its close-ended nature, this alleged six month scheme is not sufficient to satisfy RICO's continuity requirement.

### F. ERISA

■ The Defendants argue that they are not liable for breach of a fiduciary duty under ERISA because they are not fiduciaries. Under ERISA, a fiduciary is defined, in part, as a person who "exercises any authority or control respecting . . . disposition of [the plan's] assets, . . . ." 29 U.S.C. § 1002(21)(A)(i). According to 29

C.F.R. § 2510.3–102(a), plan assets include "amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets."

The Employees allege that NCFE, Poulsen, Riddle, Leigh Ann Barney ("Barney"), Holland, Clemmens and Winters were fiduciaries. (Sec.Supp.Compl.¶ 120.) They also allege that each of these Defendants exercised authority or control over monies withheld from the Employees' wages. (*See id.* at ¶¶ 116, 117, 124.) These paragraphs are sufficient to allege that the Defendants were ERISA fiduciaries with respect to these alleged withheld funds. They have stated a claim upon which relief may be granted.

We also note that the Defendants argue that the Employees are not entitled to certain remedies under ERISA law. The Employees, however, have not made clear what remedies they are seeking. Therefore, we will defer ruling upon this issue until the record is further clarified.

## II. *Trustee's Complaint*

### A. Statute of Frauds

■ The Trustee alleges that NCFE failed to fulfil its promise to provide funding to help "sustain HHM operations through a financially difficult time." (Inter.Compl.¶ 51.) In Count V, the Trustee alleges this agreement as a contract which NCFE breached. In the portions of Count II which relate to NCFE, the Trustee alleges that NCFE fraudulently induced HHM to make certain transfers by promising this funding. This is also the basis upon which the RICO claim is made in Count I. NCFE responds by arguing that Kentucky's statute of frauds prevents HHM from maintaining these claims because this alleged promise was never reduced to writing.

KRS § 371.010 states:

No action shall be brought to charge any person: ... (9) Upon any promise, contract, agreement undertaking, or commitment to loan money, to grant, extend, or renew credit ... unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith ....

This statute squarely addresses the situation alleged by the Trustee. Therefore, in order to maintain any claims based upon these allegations, the Trustee must allege either a writing which satisfies the statute or facts which warrant finding an exception. He has done neither.

The Trustee argues that two writings mentioned in the complaint satisfy the statute of frauds. (*See* Inter.Compl. ¶¶ 45, 47.) He notes that multiple writings may satisfy the statute of frauds and that such writings can either predate or postdate the contract. *Lonnie Hayes and Sons Staves, Inc. v. Bourbon Cooperage,* 777 S.W.2d 940, 942 (Ky.App.1989). However, the Trustee fails to explain how the two documents to which the complaint refers satisfy the statute of frauds.

■ To satisfy the statute of frauds, writings must show all of the essential terms of the contract. *Nicholson v. Clark,* 802 S.W.2d 934, 938 (Ky.App.1990)(citing *Antle v. Haas,* 251 S.W.2d 290 (Ky.1952)). The terms must be ascertainable without resort to parol evidence. *Id.* The Trustee is required to satisfy the statute of frauds in order to state a valid claim. He has not met this burden.

The Trustee relies upon a document which is mentioned in ¶ 47 of his complaint. Unfortunately, he has not provided

a copy of this document to the Court or attached one to his brief.[4] Regardless, the Trustee alleges that this document gave HHM "reason to believe that the Reorganization Plan was still supported ...." This does not allege the existence of a contract or promise in writing.

The same situation exists with the document mentioned in ¶ 45. Again, no copy has been provided to the Court. The only specifics provided regarding this document are that it was "an outline of the promised funding to HHM." This conclusory statement provides no details regarding the alleged promises made by NCFE or the terms of the alleged agreement.

The Trustee also argues that he is entitled to maintain these causes of action because HHM fully performed its portion of the agreement. Although there is an exception to the statute of frauds when one party has fully performed his portion of a contract, it does not apply in this situation. *Pilcher v. Stadler,* 276 Ky. 450, 124 S.W.2d 475, 479 (1939)("a contract is no longer executory and [the statute of frauds] has no application thereto, where it has been fully performed upon one side ...."). Typically, the borrower's primary obligation on a loan agreement is to repay the amount borrowed plus interest. In this case, though, the Trustee contends that the main consideration for NCFE's promise of a multi-million dollar loan was HHM's transfer of assets to Poulsen. Nevertheless, the Trustee alleges that these assets were separately sold to Poulsen with the approval of the HHM principals. (Inter.Compl.¶ 38.)

In order for this limited exception to the statute of frauds to apply, the actions of the performing party must be "unequivo-cally referable" to the alleged contract. *Austin v. Cash,* 274 Mont. 54, 906 P.2d 669, 673–74 (1995). The Trustee admits that Poulsen paid for the assets and even that there may have been some good business strategy in making them, (*see* Trustee's Resp. Summ.J., at 8). Therefore, these facts do not point unequivocally, or even probably, to the conclusion that there must have been some definite contract in place.

Because the Trustee's allegations do not satisfy the statute of frauds, no action may be brought based upon these alleged promises. Counts I and V and those portions of Count II of the Trustee's complaint which relate to NCFE fail to state a claim upon which relief can be granted, and those claims will be dismissed. In light of this disposition, the dependent claims against Winters in Count I will also be dismissed.

### B. Fraud

The remaining portion of Count II of the Trustee's complaint alleges that Defendant Mark O'Brien ("O'Brien") committed a fraud against HHM by collecting money for the purpose of purchasing stock for Riddle. Rule 9(b) requires that the Trustee, in making this claim, allege the time, place, and content of the misrepresentation on which he relied, the fraudulent scheme, the intent of the defendants, and the resulting injury. *Advocacy Org. for Patients,* 176 F.3d at 322.

The alleged facts pertaining to this claim are contained in ¶ 42(d) of the Trustee's complaint. This paragraph contains no allegations regarding the time, place, or content of the alleged misrepresentation, nor is there an adequate indication that there was any misrepresentation at all. There-

4. Because these documents are referred to in the complaint, we may consider them in a motion to dismiss without converting it into a motion for summary judgment. *Weiner v. Klais and Co.,* 108 F.3d 86, 89 (6th Cir.1997).

fore, this claim falls short of the heightened pleading standards required by Rule 9(b) and will be dismissed.

## C. Conversion

The Trustee alleges that the Defendants "received from HHM monies or assets to which they were not otherwise entitled or received assets at less than their full market value." (Inter.Compl.¶ 58.) These alleged transactions are detailed throughout the complaint and involve a purported conspiracy between principals of HHM and other Defendants to loot HHM of its assets before it wound up in bankruptcy.

 In order to state a claim for conversion, a plaintiff must allege facts sufficient to indicate that (1) the plaintiff had ownership rights at the time of the conversion, (2) the defendants obtained the property by a wrongful act or dispossession of the plaintiff's property rights, and (3) the plaintiff suffered harm. In re *Clark*, 206 B.R. 439, 441 (Bnkrtcy.W.D.Ky.1996). For the purposes of this motion, the Defendants do not challenge that the money and assets allegedly taken were originally in the possession of HHM or that the loss of those assets would harm HHM. The Defendants, however, focus their attention on the second element listed above and argue that the Trustee has not alleged a wrongful taking of the property.

Kentucky law recognizes that when a plaintiff consents to a transfer of property, he no longer has a cause of action for conversion. *Gross v. Citizens Fidelity Bank Winchester*, 867 S.W.2d 212, 214 (Ky.App.1993). In the present case, the allegations indicate that the alleged takings were done with the consent of several HHM principals who had agency authority from HHM. The Trustee also acknowledges that, at the time of the conveyances, HHM consented to them. (Trustee Resp. Summ.J. at 19.) There is no factual foundation for any claim of duress and, therefore, because the "victim" of this alleged conversion consented to the transactions, we hold that there are insufficient allegations of wrongful dispossession. This claim will also be dismissed for failure to state a claim upon which relief may be granted.

## D. Breach of Fiduciary Duty

Finally, the Trustee alleges that Riddle, Holland, TerBeest, Barney, and Clemmens (collectively, the "HHM principals") breached their fiduciary duties to HHM and that the remaining Defendants aided or abetting them in this breach.

The Trustee alleges that Riddle, Holland, and TerBeest were officers and directors of HHM. (Inter.Compl.¶ 7.) He further alleges that Barney and Clemmens were directors of HHM. (*Id.*) He does not, however, specify the dates that each held these positions. Thus, it cannot be determined, from the complaint, if and when each of the HHM principals owed a fiduciary duty to HHM. Several of the HHM principals have denied that they owed fiduciary duties to HHM at the time of some of the alleged breaches. This is not an appropriate ground of dismissal under Rule 12(b)(6), but it may be raised later in a motion for summary judgment.

 The HHM principals admit that, at a minimum, directors have a duty not to engage in transactions from which they receive improper personal benefits. (Riddle, *et al.*, Mem. Summ.J. at 6.) The Trustee alleges that Barney, a director, requested and received payments from HHM to which she was not entitled and that these payments were made in exchange for her assurances of continued participation in a plan to divert HHM assets. (Inter.Compl.¶ 39.) Also, the Trustee alleges that Clemmens, through a company he owned, received payment of over $100,000

for "services that were never rendered." (Inter.Compl.¶ 42(b).) These allegations are sufficient to state a claim that Barney improperly engaged in a transaction from which she received a personal benefit.

Officers of a corporation owe a duty of loyalty and are required by the law to refrain from acting against the corporation's interest. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 483 (Ky.1991).[5] The Trustee has alleged that the remaining HHM principals engaged in acts which could have been disloyal or against HHM's best interests. (*See ex.* Inter.Compl. ¶ 42(a) and (e).) Therefore, the Trustee has stated a cause of action with respect to these Defendants for breach of their fiduciary duties.

■ The remaining Defendants are alleged to have aided or abetted the HHM principals' alleged breach of fiduciary duty. One may be held liable to an injured plaintiff for aiding and abetting a breach of a fiduciary duty. *Lappas v. Barker*, 375 S.W.2d 248, 252 (Ky.1963). Such aid must be active and must be done with knowledge. *Id.* The Trustee has generally alleged that the remaining Defendants had knowledge of the HHM principals' actions which are alleged to be tortious, (Inter.Compl. ¶¶ 29 and 30), and that they, in various ways, acted to facilitate these alleged breaches. Winters, who is said to have had control of the corporate check book, allegedly made the improper payments. (*Id.* at ¶ 33.) It is claimed that NCFE and Poulsen required the HHM principals to sell Poulsen certain assets at an unfair price. (*Id.* at ¶ 38.) O'Brien purportedly received $50,000 to which he was not entitled so as to aid one HHM principal in a transfer of stock scheme.

(*Id.* at ¶ 42(d).) We conclude that the Trustee has stated a cause of action against these Defendants.

■ Defendant Winters makes an additional argument which we do not find persuasive. He notes that the statute of limitations for a conspiracy in Kentucky is one year. K.R.S. § 413.140(1)(c). However, we do not believe that the allegations in this case of aiding and abetting a breach of fiduciary duty amount to a claim of conspiracy. Civil conspiracy is a distinct cause of action recognized by the courts of Kentucky. *See McDonald v. Goodman*, 239 S.W.2d 97 (Ky.1951). Liability for aiding and abetting is separately recognized by the courts and puts the defendant in the same shoes as the original tortfeasor. Thus, we hold that the statute of limitations for a charge of aiding and abetting should fall under the section reserved for the underlying cause of action which, in the present case, has not yet expired. K.R.S. § 413.120.

### CONCLUSION

A separate order will be entered this date in conformity with this opinion.

### ORDER

For the reasons set forth in the memorandum opinion entered this date and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motions of the Defendants to dismiss the complaints are **GRANTED IN PART.** Count II (RICO) of the Second Supplemental Complaint and Counts I (RICO), II (Fraud), III (Conversion), and V (Breach of Contract) of the Intervening Complaint are **DISMISSED.**

---

**5.** For understandable reasons, the parties did not devote adequate space in their briefs to address whether Georgia or Kentucky law governs the duties owed by HHM's officers.

Therefore, we cite *Steelvest* for an understanding of the general rule. However, we do not intend for it to be the law of the case on this issue.

Count I (Fraud) of the Second Supplemental Complaint is **DISMISSED** with respect to Defendants National Century Financial Enterprises, Inc., Lance Poulsen, Leigh Ann Barney, Stephen Winters, Nelson Clemmens, and Mark O'Brien. Counts I (Fraud) and IV (Intentional Interference with Contractual Relations) of the Second Supplemental Complaint are **DISMISSED** to the extent that they allege damages for benefits or payments covered by ERISA. Additionally, the Second Supplemental Complaint is **DISMISSED** to the extent that it complains for injuries done to HHM.

The remaining portions of the Defendants' motions are **DENIED**.