NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 04a0093n.06
Filed: November 17, 2004

Case No. 03-6454, 03-6455

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VIRGIL ADKINS,                                )
                                              )
        *Plaintiff/Appellee,*                 )
                                              )
                v.                            )    On Appeal from the United States
                                              )    District Court for the Eastern District
RON PERRY,                                    )    of Kentucky
                                              )
        *Defendant,*                          )
                                              )
CHRYSLER FINANCIAL CORPORATION,               )
                                              )
        *Defendant/Appellant.*                )


**Before: MOORE, GIBBONS, Circuit Judges; EDMUNDS, District Judge.**[*]

        **Edmunds, District Judge.**  Defendant, Chrysler Financial Corporation, appeals the

district court's order granting summary judgment to Virgil Adkins and denying its cross-motion

for summary judgment in this diversity action on Mr. Adkins' Kentucky state law claim of

conversion against Chrysler Financial.  Chrysler Financial also appeals from the district court's

order granting Mr. Adkins' motion, brought pursuant to a garnishment order, compelling payment

to him of funds held by Chrysler Financial in the dealer cash management account of Century

Auto Sales, Inc., a company that Mr. Adkins had previously obtained a judgment against in this

---

        [*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of
Michigan, sitting by designation.

same litigation. Because the undisputed evidence shows that Century Auto, and not Mr. Adkins had an ownership interest in the funds deposited in Century's dealer account at the time of the alleged conversion, the decision below is REVERSED. Judgment should be entered in favor of Chrysler Financial on Mr. Adkins' claim of conversion. The order "sustaining as moot" Mr. Adkins' motion to compel is VACATED because that order is premised on the district court's erroneous conclusion that Mr. Adkins was entitled to summary judgment on his conversion claim against Chrysler Financial. Finally, this matter is REMANDED so that the district court may consider in the first instance Chrysler Financial's objections to the garnishment order, arguing that it has a prior, perfected security interest in the funds held in Century Auto's dealer account.

## I. BACKGROUND

### A. Century Auto's Relationship With Chrysler Financial

Century Auto, doing business as Century Chrysler Plymouth Dodge, entered into a Security Agreement and Master Credit Agreement with Chrysler Financial (now known as DaimlerChrysler Services) on May 29, 1985. Under the terms of this Agreement, Chrysler Financial established a wholesale line of credit that provided financing to Century Auto for its purchase of new and used cars, and Century Auto granted Chrysler Financial a security interest in, among other things, all of its inventory, all accounts, contract rights, documents, instruments, and general intangibles. Chrysler Financial perfected its security interest by filing a UCC-1 financing statement with the Clerk of Lawrence County, Kentucky.

On September 25, 1987, and January 1, 1998, Century Auto (doing business as Century Chrysler Plymouth Dodge) entered into a Dealer Cash Management Agreement with Chrysler Financial. The Dealer Cash Management Agreement allowed the dealer, Century Auto, to deposit

2

"surplus" funds with Chrysler Financial, which would then be held by Chrysler in a dealer cash management account. Funds deposited in the dealer's account are credited with the same interest as that applied to the dealer's floor plan obligations. The amount of interest credited to a dealer's account is offset by Chrysler Financial against the interest due from the dealer on its wholesale line of credit (wholesale floor plan). For example, interest earned on a $200,000 balance in a dealer's account would offset the interest owed on that dealer's $200,000 of financed inventory. Funds deposited by the dealer in his account are reflected as a credit to that dealer's wholesale line of credit with Chrysler Financial. The Dealer Cash Management Agreement also pledged the funds held in Century Auto's dealer account to all other obligations Century Auto owed to Chrysler Financial, including those under the Security Agreement.

All of the funds in Century Auto's dealer account are regarded by Chrysler Financial as the property of the dealer, Century Auto. Every dealer was told that any money deposited into a dealer account became the dealer's money and every withdrawal had to be made in the dealer's name. Funds in the dealer account may be withdrawn by the dealer unless Chrysler Financial has deemed the dealer at risk financially.

### B.    Mr. Adkins' Relationship With Century Auto

Mr. Adkins, a resident of West Virginia, started in the automobile business in 1947 and in the 1970's was a majority partner in a General Motors dealership. His relationship with Century Auto, a Kentucky corporation, began in 1991 when he followed-up on a request to invest in Ron Perry's various automobile dealerships. Ron Perry is the President of Century Auto. Mr. Adkins was told that Ron Perry was pretty heavy in debt and needed a partner. In 1991, after some investigation, Mr. Adkins invested $150,000 in the holding company, Century Holding Company,

3

that was the parent company for Ron Perry's automobile dealerships, including Century Auto which did business as Century Chrysler Plymouth Dodge.  In return, Mr. Adkins obtained shares of stock in Century Holding.  He was also paid $750 a month as a consultant for the dealerships under the Century Holding umbrella.

On January 28, 1998, Mr. Adkins agreed to sell all of his stock in Century Holding back to Century Holding.  In exchange for Mr. Adkins' sale of his stock, his promise to advise and assist Century's dealership in the sale of cars for a period of seven years, and satisfaction of various promissory notes from Century Holding to Mr. Adkins in the total amount of $200,000, Century Holding agreed to pay Mr. Adkins:  $5,000 on January 28, 1998; $10,000 on March 1, 1998; $10,000 on April 1, 1998; $10,000 on May 1, 1998; $10,000 on June 1, 1998; and the balance of $440,639.43 in accordance with the terms of a promissory note executed by Century Holding on January 28, 1998.  Century Holding further agreed: to pay health care insurance costs, not to exceed $400 per month, for Mr. Adkins and his wife for a period of five years or sooner if the promissory note was fully paid; to provide Mr. Adkins and his wife with the use of a late-model used demonstrator car for a period of seven years; to secure the release of Mr. Adkins' personal guaranty on certain Century notes; and to execute a second mortgage on its main building to Mr. Adkins.

C.      **Mr. Adkins' Relationship With the Century Auto/Chrysler Financial Cash Management Account**

In 1993, while Mr. Adkins held an ownership interest in Century Holding, he learned about Chrysler Financial's dealer accounts which permitted dealers to deposit funds and earn a high rate of interest.  From 1993 through 1995, while Mr. Adkins held an ownership interest in Century Holding, he wrote checks totaling $50,000 to Century Auto.  Each of those checks was

4

made payable to the dealership, Century Auto.  Century Auto then deposited Mr. Adkins' check into one of its accounts.  Century Auto would then direct that funds from its own account be electronically transferred to its dealer account at Chrysler Financial.  None of the money from Mr. Adkins was ever directly deposited in Century's dealer account.  Each month, after the Century Auto dealership received its statement from Chrysler Financial showing the interest earned in its dealer account, Century Auto would write Mr. Adkins a check, reflecting the amount of interest earned on the sum of money he had paid to Century Auto.  Century Auto also sent Mr. Adkins an IRS 1099 Miscellaneous tax form each year showing the amount of interest Century Auto had paid to him.

In 1995, Century's President, Ron Perry, approached Mr. Adkins and told him that the Century dealerships were experiencing a downturn in business.  Ron Perry asked Mr. Adkins if he would agree to Century Auto's withdrawal of the $50,000 that Mr. Adkins had provided to Century Auto for deposit in its dealer account so that Mr. Adkins could loan it outright to Century Auto.  Century Auto promised Mr. Adkins that if he agreed to this, Century would execute a promissory note to him in the amount of $50,000.  Mr. Adkins agreed.  Century Auto withdrew $50,000 from its dealer account, and on April 25, 1995, a promissory note was executed where Century agreed to repay Mr. Adkins $50,000.  All of this took place before the 1998-2000 transactions that are at issue in Mr. Adkins' conversion claim against Chrysler Financial.

In 1998, Mr. Adkins claims he once again began writing checks to Century Auto with the understanding that Century Auto would deposit the checks into its bank account and would then electronically transfer Century Auto funds in the same amount for deposit in Century Auto's dealer account.  Century Auto once again provided Mr. Adkins with a monthly check, reflecting

the amount of interest earned on the sum of money he had paid to Century Auto so that Century could make a deposit to its dealer account. Once again, Century Auto provided Mr. Adkins with an IRS 1099 Miscellaneous form each year reporting the amount of interest it had paid to him. It is these 1998-2000 transactions that give rise to Mr. Adkins' conversion claim against Chrysler Financial.

**D.      Mr. Adkins' Lawsuit Against Perry, Century Holding, Century Auto and Chrysler Financial**

On November 1, 2000, Century Auto went out of business. Chrysler Financial liquidated all of Century Auto's collateral and applied the balance in its dealer account to Century's debt under the terms of the Chrysler Financial/Century Auto Security Agreement. On December 4, 2000, Mr. Adkins made a demand on Chrysler Financial for a return of the $225,000 he had provided to Century Auto since 1998 with the understanding that Century Auto would use that money to make a deposit to its dealer account. Chrysler Financial refused Mr. Adkins' demand.

On January 15, 2002, Mr. Adkins filed a complaint in the Circuit Court of Lawrence County, Kentucky, against Ron Perry, Century Auto, Century Holding, and Chrysler Financial, asserting various claims, including a conversion claim against Chrysler Financial. Ron Perry, then a resident of California, had filed bankruptcy in California at the time the action was commenced, and Mr. Adkins' proceedings against him have been effectively discontinued. On February 26, 2002, Mr. Adkins, Century Auto, and Century Holding filed an Agreed Judgment in the Kentucky state court suit.

In that Agreed Judgment, it was stipulated that (1) Century Holding had defaulted under the terms of the January 28, 1998 promissory note and owed Mr. Adkins $234,676.10; (2) Century Holding had failed to comply with terms of the January 28, 1998 stock purchase

6

agreement by not providing Mr. Adkins health insurance coverage and denying him use of a demonstrator car; and (3) Century Auto has refused to return to Mr. Adkins the $225,000 placed into a Dealer Savings Plan maintained by Chrysler Financial on behalf of Century Auto. It was also agreed that Mr. Adkins would have a Judgment: (1) against Century Holding for $234,676.10, representing the balance due on the January 28, 1998 promissory note; and for $32,000.00, representing the health insurance coverage promised but not provided and representing the loss of use of a demonstrator car; and (2) against Century Auto for $225,000.00, representing Mr. Adkins' contribution to Century Auto's Dealer Savings Plan.

Following entry of the Agreed Judgment, Chrysler Financial removed the action to the United States District Court, Eastern District of Kentucky, asserting that, in light of the above proceedings, the federal court now had diversity jurisdiction over the dispute between Mr. Adkins and Chrysler Financial.

On January 31, 2003, while litigation was pending between Mr. Adkins and Chrysler Financial in the district court, Mr. Adkins obtained an "Order of Garnishment" in the sum of $491,676.99 with respect to his judgment against Century Holding and Century Auto and served it on DaimlerChrysler Services, successor to Chrysler Financial. The Garnishment Order compels DaimlerChrysler Services to hold any property in its possession belonging to Century Auto, and to subsequently deliver any such Century Auto property to Mr. Adkins. DaimlerChrysler Services answered, admitted that it held property in a Century Auto account (approximately $142,000, representing the proceeds of Century Auto's dealer account and liquidation of other Century Auto assets), but claimed a security interest in the funds to secure on-going and future liabilities of Century Auto to DaimlerChrysler Services. In March, 2003, Mr. Adkins filed a

7

motion asking the district court to enter an order, pursuant to the garnishment order, compelling DaimlerChrysler to pay to Mr. Adkins all funds currently held in Century Auto's dealer account.

In June, 2003, Mr. Adkins filed a motion for summary judgment on his state-law conversion claim against Chrysler Financial. Chrysler Financial filed a response and a cross-motion for summary judgment seeking dismissal of that claim.

On October 10, 2003, the district court entered an order granting Mr. Adkins' motion for summary judgment on its conversion claim against Chrysler Financial and denying Chrysler Financial's cross-motion for summary judgment on that same claim.

On October 14, 2003, the district court "sustained as moot" Mr. Adkins' motion, brought pursuant to the garnishment order, seeking to compel Chrysler Financial to pay to Mr. Adkins all funds currently held in Century Auto's dealer account. It reached this result after concluding that this motion sought to recover the same funds at issue in Mr. Adkins' motion for summary judgment, and the district court had just granted that motion a few days earlier. A Judgment was entered against Chrysler Financial on October 17, 2003.

Chrysler Financial now appeals the district court's October 10, 2003 order, arguing that the decision to grant summary judgment to Mr. Adkins and to deny Chrysler's cross-motion for summary judgment on Mr. Adkins' conversion claim is based on the erroneous conclusion that the funds in Century Auto's dealer account were the property of Mr. Adkins, not Century Auto. Chrysler Financial further argues that, because the district erred in granting summary judgment in favor of Mr. Adkins on his conversion claim, it likewise erred in "sustaining as moot" Mr. Adkins' motion compelling Chrysler Financial to pay him the funds held in Century Auto's dealer account.

8

## II. ANALYSIS

### A.  Standard of Review

The standard of review of an order granting a motion for summary judgment is *de novo*. *McMullen v. Meijer, Inc.*, 355 F.3d 485, 489 (6th Cir. 2004).  Likewise, the standard of review of an order denying a motion for summary judgment "based solely upon legal grounds" is *de novo*. *Id.*  The district court's determinations of state law are reviewed *de novo*.  *Salve Regina Coll. v. Russell*, 499 U.S. 226, 231 (1991).

### B.  Mr. Adkins' Common-law Conversion Claim

Mr. Adkins' sole claim against Chrysler Financial is one of conversion under Kentucky law, alleging that, in December 2000, when Chrysler Financial refused his demand for $225,000 from Century Auto's dealer account, it wrongfully converted Mr. Adkins' personal property. Chrysler Financial argues on appeal that the district court failed to apply the proper analysis to Mr. Adkins' conversion claim and thus improperly granted his motion for summary judgment and denied Chrysler's cross-motion.  Contrary to the undisputed evidence, Chrysler Financial argues, the district court erroneously assumed that the funds in Century Auto's dealer account belonged to Mr. Adkins, not Century Auto.  Likewise, contrary to the undisputed evidence, it erroneously assumed that Chrysler Financial knew that the funds in Century Auto's dealer account belonged to Mr. Adkins personally and thus erroneously concluded that to allow Chrysler Financial to retain the money in Century Auto's dealer account would cause an inequitable result.  Chrysler Financial is correct.  The district court applied an incorrect analysis to Mr. Adkins' conversion claim and improperly granted his motion for summary judgment on that claim and improperly denied Chrysler Financial's cross-motion.

### 1. Conversion Under Kentucky Law

In a diversity action such as this, the Court applies the substantive law of the forum state, in this case Kentucky law. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

To establish a claim for conversion under Kentucky law, the plaintiff has the burden of establishing that (1) he had "ownership rights at the time of the conversion," (2) the defendant obtained the plaintiff's property "by a wrongful act or dispossession of the plaintiff's property rights, and (3) the plaintiff suffered harm." *Anderson v. Pine South Capital, LLC*, 177 F. Supp.2d 591, 603 (W.D. Ky. 2001). Further, "Kentucky law recognizes that when a plaintiff consents to a transfer of property, he no longer has a cause of action for conversion." *Id.* (citing *Gross v. Citizens Fidelity Bank Winchester*, 867 S.W.2d 212, 214 (Ky. Ct. App. 1993)).

The district court's decision to grant summary judgment in favor of Mr. Adkins was premised on its erroneous conclusion that the funds in Century Auto's dealer account belonged to him and not Century Auto. The undisputed evidence shows otherwise.

### 2. Mr. Adkins Failed to Establish the First Element of His Conversion Claim

Mr. Adkins failed to meet his burden by establishing the first element of his conversion claim. The deposits at issue took place beginning in 1998. Mr. Adkins does not recall the precise date in 1998 that he first wrote a check to Century Auto, but he testified that it was about the same time that he sold his shares in Century Holding back to that company. The undisputed evidence in the record shows an initial investment on February 5, 1998, of $50,000 and a balance of $225,000 as of December 31, 2000. On February 5, 1998, Mr. Adkins was no longer a stockholder in Century Holding and thus no longer had an ownership interest in Century Auto. Nonetheless, Mr. Adkins continued to write checks to Century Auto with the understanding and

10

consent that Century Auto would deposit his check into its own account and then electronically transfer its own funds for deposit into its dealer account. Mr. Adkins described this arrangement with Century Auto as a "gentlemen's agreement." Mr. Perry confirmed that there was no written agreement with Mr. Adkins covering any of these transactions between Century Auto and Mr. Adkins. Mr. Adkins later successfully sued Century Auto, obtaining a judgment where Century Auto agreed to reimburse him for the $225,000 he provided to Century Auto under this arrangement.

Regardless of the arrangement between Century Auto and Mr. Adkins, it is undisputed that all funds deposited into Century Auto's dealer account with Chrysler Financial came from Century Auto, not Mr. Adkins. Cash is a fungible commodity. Mr. Adkins failed to establish how he maintained ownership over funds he gave to Century Auto, rather than Chrysler Financial.

The following facts are also undisputed. All of the funds in Century Auto's dealer account are regarded by Chrysler Financial as the property of the dealer, Century Auto. Every dealer was told that any money deposited into a dealer account became the dealer's money, and every withdrawal had to be made in the dealer's name. Chrysler Financial was not concerned with how the dealer's money got disbursed after it was withdrawn from the dealer account. All interest checks Mr. Adkins received came from Century Auto, not Chrysler Financial. Mr. Adkins received an IRS Form 1099 reporting interest paid to him from Century Auto, not Chrysler Financial. Mr. Adkins received no documents concerning these transactions directly from Chrysler Financial. The only documents Mr. Adkins received were Century Auto's monthly Statement of Wholesale Account. Those documents were provided to Mr. Adkins by Century Auto and contained information generated electronically by Century Auto, not Chrysler Financial.

11

Based on these undisputed facts, Mr. Adkins failed to establish that the funds in Century Auto's dealer account in December 2000 were his personal property and not the property of Century Auto. The district court erroneously assumed that Mr. Adkins had established this essential element of his conversion claim and erroneously granted his motion for summary judgment and denied Chrysler Financial's cross-motion. It was also error for the district court to conclude, as a matter of law, that Chrysler Financial knew that the money in Century Auto's dealer account belonged to Mr. Adkins, that Chrysler had the opportunity and duty to warn Mr. Adkins about the risks of "his investment" in the dealer account but failed to do so and thus it would be inequitable for Chrysler Financial to retain or use the funds in Century Auto's dealer account.

The district court should have granted Chrysler Financial's cross-motion for summary judgment on Mr. Adkins' conversion claim. The undisputed facts establish that the funds in Century Auto's dealer account belong to Century Auto. Because these funds belong to Century Auto, they are subject to the terms and conditions of the Dealer Cash Management Agreement, including those terms that grant Chrysler Financial a security interest in any funds deposited into the dealer account.[1]

---

[1]Adkins is not without a remedy. He has successfully obtained a judgment against Century Auto allowing him to recover from Century Auto the $225,000 he paid it starting in 1998.

### 3. The Second Element of Mr. Adkins' Conversion Claim

Chrysler Financial also asserts that, even if Mr. Adkins had established the first essential element of his conversion claim, he cannot prove the second – that it was wrong for Chrysler Financial to retain and use the funds in Century Auto's dealer account to offset Century Auto's debt to Chrysler Financial. Chrysler Financial presents several arguments supporting this contention. The first – that the challenged funds were deposited into Century Auto's dealer account with Mr. Adkins' consent – is persuasive.[2] Because Mr. Adkins' consented to the transfer of his property to Century Auto's dealer account, he cannot state a conversion claim against Chrysler Financial under Kentucky law. *Anderson*, 177 F. Supp.2d at 603.

### C. Mr. Adkins' Motion to Compel

Because Mr. Adkins cannot establish the essential elements his conversion claim, this Court VACATES the district court's order sustaining his motion, brought pursuant to a garnishment order, compelling Chrysler Financial to provide him with the funds held in Century Auto's dealer account. That order is premised on the district court's erroneous conclusion that Mr. Adkins was entitled to summary judgment on his conversion claim. Moreover, because the district court never considered Chrysler Financial's objections to the garnishment order, this Court REMANDS so that the district court may consider in the first instance Chrysler Financial's arguments that it has a prior, perfected security interest in Century Auto's funds in its dealer account.

---

[2]In light of this conclusion, there is no need to consider Chrysler Financial's additional arguments.

### III.  CONCLUSION

For the reasons provided above, this Court REVERSES the district court's grant of summary judgment in favor of Mr. Adkins and its denial of summary judgment in favor of Chrysler Financial.  This Court also VACATES the district court's order "sustaining as moot" Mr. Adkins' motion to compel, and REMANDS so that the district court may consider in the first instance Chrysler Financial's arguments, in its objections to the garnishment order and Mr. Adkins' motion to compel, that it has a prior, perfected security interest in Century Auto's funds in its dealer account.