File Name: 09a0611n.06

**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 08-6222**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Aug 26, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| VIRGIL ADKINS, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHRYSLER FINANCIAL CORP., | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RON PERRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before: SILER, GIBBONS, and GRIFFIN, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant-appellant Chrysler Financial Corporation ("Chrysler") appeals the district court's order finding that Chrysler may not deduct attorneys' fees from this case and several other lawsuits from money held in a Cash Management Account ("CMA") owed to plaintiff-appellee Virgil Adkins. Because the district court did not err in finding that Chrysler is not entitled to reimbursement for its attorneys' fees, we affirm.

I.

On May 29, 1985, Chrysler entered into a Security Agreement and Master Credit Agreement ("Security Agreement") with Century Auto, which did business as Century Chrysler Plymouth

Dodge. Under the Security Agreement, Chrysler established a wholesale line of credit to provide financing for Century Auto's purchase of new and used cars, and Century granted Chrysler a security interest in its inventory, accounts, contract rights, documents, instruments, and general intangibles. Chrysler perfected its security interest through the filing of a UCC-1 financing statement with the Clerk of Lawrence County, Kentucky. The relevant language regarding attorneys' fees from the Security Agreement is as follows: "Debtor [Century Auto] hereby agrees that it shall pay all expenses and reimburse Secured Party [Chrysler] for any expenditures, including reasonable attorneys' fees and legal expenses, in connection with Secured Party's exercise of any of its rights and remedies under this Agreement." Adkins did not sign the Security Agreement or a subsequent 1988 Cash Management Agreement establishing the CMA.

Adkins began working in the automobile business in 1947 and began his relationship with Century Auto in 1991. Adkins became aware that defendant Ron Perry, the president of Century Auto, was indebted and looking for a business partner. Adkins invested $150,000 in Century Holding, the holding company for Century Auto, and received shares of stock in Century Holding in exchange. He also earned $750 per month as a consultant for Century Auto. Adkins learned of Chrysler's CMAs, which allowed dealers to deposit funds in order to earn a higher rate of interest. From 1993 to 1995 and again in 1998, Adkins wrote checks payable to Century Auto that Century Auto then deposited into its accounts. Century Auto would then transfer those funds to its CMA at Chrysler. After Chrysler informed Century Auto how much interest the dealer account had earned that month, Century Auto would write Adkins a check reflecting the amount of interest his funds had earned. Adkins was essentially using the CMA as an investment account.

2

On January 28, 1998, Adkins entered into an agreement with Century Holding in which Century Holding was to purchase Adkins's shares of stock for $485,639.43, provide health insurance for Adkins and his wife for five years, and provide Adkins use of a demonstrator car for seven years. Century Holding subsequently gave Adkins a promissory note guaranteed by Perry for $440,639.43. In November 2000, Century Holding and Perry defaulted on the note by failing to make payments, failing to provide health insurance for Adkins and his wife, and failing to provide the demonstrator car as the agreement required. Century Holding and Perry took no action to cure after being formally notified of the default.

On November 1, 2000, Century Auto went out of business. Adkins sued several defendants in Kentucky state court with respect to his investments in Century Auto. He filed a conversion claim against Chrysler in January 2002, alleging that Chrysler had refused to return to him $225,000 that he had provided to Century Auto to invest in the CMA. On February 26, 2002, Adkins, Century Auto, and Century Holding entered into an agreed judgment in Kentucky state court stipulating that Century Auto would refuse to return to Adkins the $225,000 he invested in the CMA; that Adkins would have a judgment of $234,676.10 on the promissory note Century Holding issued to Adkins in 1998; that Adkins would have a judgment of $32,000 against Century Holding for the unpaid health insurance premiums and loss of use of a demonstrator car; and that Adkins would have a $225,000 judgment against Century Auto, representing his contributions to the CMA. Chrysler then removed the conversion claim to federal court on the basis of diversity jurisdiction.

On January 31, 2003, Adkins obtained an "Order of Garnishment" for $491,676.99 with respect to his agreed judgment against Century Auto and Century Holding and served the order on

3

Chrysler. Chrysler acknowledged that it held approximately $142,000 in the CMA but claimed a security interest in those funds related to Century Auto's liabilities. Adkins filed a motion in March 2003 asking the district court to enter an order compelling Chrysler to pay to Adkins all of the funds held in Century Auto's CMA.

In June 2003, Adkins moved for summary judgment on his state law conversion claim against Chrysler. Chrysler responded and filed a cross-motion for summary judgment. On October 10, the district court granted Adkins's motion for summary judgment on his conversion claim against Chrysler and denied Chrysler's cross-motion for summary judgment. *Adkins v. Perry*, No. 02-cv-78-HRW, slip op. at 13 (E.D. Ky. Oct. 10, 2003). On October 14, the district court "sustained as moot" Adkins's March 2003 motion to compel Chrysler to pay him the funds from Century Auto's CMA. *Adkins v. Perry*, No. 02-cv-78-HRW, slip op. at 2 (E.D. Ky. Oct. 14, 2003). The district court concluded that Adkins's March 2003 motion to compel sought to recover the same funds at issue in the lawsuit where the district court had earlier granted Adkins's motion for summary judgment. *Id.* at 1.

On appeal, a panel of this court reversed the grant of summary judgment on Adkins's conversion claim and directed that judgment should be entered for Chrysler because Century Auto, rather than Adkins, had ownership rights in the CMA funds during the period in question. *Adkins v. Perry*, 116 F. App'x 605, 606 (6th Cir. 2004). The panel also vacated the district court's order sustaining as moot Adkins's motion to compel because that order was based on the erroneous conclusion that Adkins was entitled to summary judgment against Chrysler on his conversion claim. *See id.* at 606. The panel remanded the matter "so that the district court may consider in the first

4

instance Chrysler Financial's objections to the garnishment order, arguing that it has a prior, perfected security interest in the funds held in Century Auto's dealer account." *Id.*

Following the panel's opinion, neither party took any action until 2008. In 2008, Adkins acknowledged that Chrysler had a prior, perfected security interest in the CMA funds, and Chrysler acknowledged that Adkins was entitled to recover under the 2002 agreed judgment. Chrysler asserted, however, that the balance remaining in the CMA had fallen from $141,928.85 to $3,641.54 because it was entitled to withdraw $81,176.81 to pay attorneys' fees it incurred in the Adkins litigation and $44,610.50 of attorneys' fees and a $12,500 settlement in other litigation related to Century Auto.[1] Adkins objected to the withdrawal of the funds to pay for attorneys' fees and claimed that he should receive the balance of the CMA, minus only the $12,500 settlement amount, for a total of $129,428.85.

The district court noted that Kentucky follows the "American Rule" that in the absence of a statute or contract expressly allowing them, attorneys' fees are generally not allowable as costs or recoverable as damages. *Adkins v. Perry*, No. 02-78-HRW, slip op. at 7-8 (E.D. Ky. Sept. 3, 2008). The district court rejected Chrysler's argument that the 1985 Security Agreement between Chrysler and Century Auto allowed for the recovery of attorneys' fees, finding that Chrysler's fees were not incurred in connection with its rights under that agreement. *Id.* at 8-9. The district court ordered Chrysler to remit to Adkins the balance of the $129,428.85 remaining in the CMA. *Id.* at 10. Chrysler timely appealed.

---

[1]This case was a lawsuit by 47 individuals against Ron Perry, Century Auto, Chrysler and others seeking lien payments, punitive damages, and other specified damages. *Chapman, et al. v. Ron Perry, et al.*, No. 00-CI-263, Lawrence Cir. Ct. Chrysler settled the *Chapman* case for $12,500.

II.

Where the district court denies attorneys' fees based on an issue of contract interpretation, we apply *de novo* review. *See Cook v. All State Home Mortg., Inc.*, 2009 U.S. App. LEXIS 10568, at *10 (6th Cir. May 15, 2009) (citing *Noe v. PolyOne Corp.*, 520 F.3d 548, 551 (6th Cir. 2008)). A federal court sitting in diversity applies the substantive law of the forum state; therefore, Kentucky state law applies. *See Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003). Kentucky follows the "American Rule" that "with the exception of a specific contractual provision allowing for recovery of attorneys' fees or a fee-shifting statute, . . . each party assumes responsibility for his or her own attorneys' fees." *Aetna Cas. & Sur. Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (alteration in original) (citation omitted).

The parties do not dispute that there is no statute authorizing attorneys' fees in this case. Rather, Chrysler relies on the language of the Security Agreement, which provided that Century Auto would pay reasonable attorneys' fees "in connection with [Chrysler]'s exercise of any of its rights under this Agreement." The Security Agreement further provides that Chrysler "shall have all the rights and remedies applicable under the Uniform Commercial Code or under any other statute or at common law or in equity or under this Agreement. Such rights and remedies shall be cumulative." Chrysler claims that via the Order of Garnishment, Adkins steps into the shoes of Century Auto and has no greater rights against Chrysler than Century Auto would have had. Because Chrysler would have been entitled to attorneys' fees under the Security Agreement if it had been litigating against Century Auto, Chrysler would interpret the contractual provisions above to apply to the costs of litigating both the *Chapman* matter and Adkins's conversion claim against Chrysler.

6

Adkins would instead read the attorneys' fees provision to apply narrowly to an "Event of Default" as described in the Security Agreement. According to Adkins, if the parties had intended Chrysler to be entitled to attorneys' fees for any right and remedy, the Security Agreement would not limit the attorneys' fees to Chrysler's "exercise of any of its rights *under this Agreement*." (emphasis added). Because Chrysler was the drafter of the Security Agreement, any ambiguities in the provisions should be strictly construed and construed against the drafter. *See Bituminous Cas. Corp. v. Kenway Contr., Inc.*, 240 S.W.3d 633, 638 (Ky. 2007) (noting the general principle that contracts should be construed against the drafter if ambiguous). Adkins believes the above language setting forth Chrysler's rights and remedies and describing them as "cumulative" was intended to "create a difference between contractual remedies and other legal remedies." (Pl. Br. at 15.) Chrysler is seeking to offset attorneys' fees from its defense against Adkins's tort law conversion claim and the *Chapman* conversion and negligence claims. Those claims were grounded in the common law rather than the contractual provisions of the Security Agreement. Because Kentucky law does not permit an award of attorneys' fees in actions for conversion, *see Motors Ins. Co. v. Singleton*, 677 S.W.2d 309, 315 (Ky. Ct. App. 1984), Adkins argues that the district court correctly denied Chrysler attorneys' fees as an offset against the CMA.

There appear to be few Kentucky cases on point that are helpful in interpreting the contractual provisions. The central issue is whether the *Adkins* and *Chapman* litigation arose from the Security Agreement. We find that the words "under this Agreement" limit Chrysler's right to attorneys' fees to those actions arising directly under the Security Agreement. Because the attorneys' fees incurred here arose from actions under state common law rather than under the Security

7

Agreement, Chrysler is not entitled to deduct those fees before paying over the balance of the CMA to Adkins under the Order of Garnishment. As the Second Circuit noted in addressing a similar issue, "while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003). Strictly construing the agreement at issue here, the Security Agreement's attorneys' fees provision does not encompass Chrysler's defenses to claims that arose under state law rather than under the Security Agreement.

Adkins has received nothing on his outstanding judgment against Century Auto of $491,676.99. If Chrysler is permitted to deduct its attorneys fees in this matter, Adkins is unlikely to receive even the paltry balance Chrysler claims of $3,641.54, as Chrysler is undoubtedly still incurring attorneys' fees by pursuing this appeal. The original parties, Chrysler and Century Auto, clearly did not intend for the Security Agreement's attorneys' fees provision to encompass claims against third parties under state common law. The district court's interpretation of the Security Agreement's attorneys' fees provision as being limited in scope to actions arising "under the Agreement" is supported by the contractual language and by common sense.

III.

For the foregoing reasons, we affirm the district court's order finding that Chrysler may not deduct its attorneys' fees before paying over the $129,428.85 CMA balance to Adkins.