NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0879n.06

Nos. 11-3296 / 11-3335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Aug 09, 2012**

LEONARD GREEN, Clerk

PROGRESSIVE FOODS, LLC,

    Plaintiff-Appellee / Cross-Appellant,

EITAN FLANK; MIKE FLANK; SHAUL FLANK;
JOEL SAUSEN,

    Third Party Defendants-Appellants,

v.

DUNKIN' DONUTS, INC., et al.,

    Defendants-Appellants / Cross-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:  NORRIS, CLAY, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff Progressive Foods, Inc. filed suit against defendant Dunkin' Donuts, Inc., and its affiliates, over the development of Dunkin' Donuts franchises in the Cleveland, Ohio area. Dunkin' filed a counterclaim seeking unpaid franchise fees and declaratory and injunctive relief. Dunkin' then filed a motion for summary judgment, which the district court summarily denied. Following a bench trial, the district court awarded Progressive $336,000 in damages, determined that Dunkin' was entitled to $100,000 in franchise fees, and denied Dunkin's request for declaratory and injunctive relief, as well as interest, costs, and attorneys' fees. The parties cross-appeal the district court's judgment. We affirm in part and reverse in part.

I.

Progressive filed this suit against Dunkin' and its affiliates on October 3, 2007, in the Court of Common Pleas for Cuyahoga County, Ohio, alleging breach of contract, unjust enrichment, unfair competition, injunctive relief, frustration of commercial purpose, intentional interference with a contract, civil conspiracy, and fraud. Dunkin' removed the case to the United States District Court for the Northern District of Ohio. Thereafter, the district court denied Dunkin's motion for summary judgment, and the case proceeded to a bench trial.

On February 15, 2011, the district court issued its Findings of Fact and Conclusions of Law and entered a judgment. It found that Dunkin' had breached its contracts with Progressive by failing to develop and equip three stores to Dunkin's specifications, by placing Progressive on "development holds," and by failing to assign warranties. It also found that Dunkin' made misrepresentations regarding the suitability of the three franchise sites, which induced Progressive to enter into the agreements and caused Progressive injury.

The district court awarded Progressive a total of $336,000 in damages, as well as injunctive relief in the form of the right to develop three additional franchise locations during a three-year period following the date of the judgment entry. The district court also entered judgment in Dunkin's favor for $100,000 in unpaid franchise fees. However, it denied Dunkin's request for declaratory and injunctive relief seeking to terminate the store development agreement ("SDA"), as well as Dunkin's request for costs, interest, and attorneys' fees. The parties timely appeal.

II.

On appeal of a district court's judgment imposed following a bench trial, we review the lower court's conclusions of law de novo and its findings of fact for clear error. *Dillon v. Cobra Power Corp.*, 560 F.3d 591, 599 (6th Cir. 2009).

## A. Dunkin's Appeal

Dunkin' argues that the district court's award of judgment to Progressive should be reversed because, among other reasons, Progressive's claims are barred by the contractual limitations period in subsection 18.F.(5) of the SDA. That section provides that

> any and all claims and actions arising out of or relating to this agreement, the relationship of developer and ADQSR or developer's operations of the unit, brought in any forum by any party hereto against the other, must be commenced within two (2) years after the discovery of the facts giving rise to such claim or action, or such claim or action shall be barred, except for financial obligations of the developer.

Progressive filed suit on October 3, 2007. In its initial complaint, it alleged that Dunkin' "failed in [its] site selection, construction, development and support obligations" with respect to each of its three franchise locations: Mentor, Chardon, and Euclid. However, Progressive also alleged that it had "timely notified the Defendants of all of the issues and problems and their claims against the Defendants on or about August 3, 2005," which was more than two years prior to the date it brought suit. Progressive later filed a first amended complaint in which it repeated the notification allegation six more times. Dunkin' points to the repeated allegations as Progressive's admission of facts that bar its claims under the contractual limitation period.

Progressive questions the factual basis of its admission, asserting that defendants did not produce any evidence regarding Progressive's alleged August 3, 2005, "notification" of its claims.

Progressive also argues that the district court impliedly found that its admission was not deliberately made because it could not have known the extent of all of its claims on or around August 3, 2005. These arguments are unavailing. "In order to qualify as judicial admissions, . . . statements must be deliberate, clear and unambiguous," *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997), but they do not also have to be true. Indeed, "[a] judicial admission trumps evidence." *Murrey v. United States*, 73 F.3d 1448, 1455 (7th Cir. 1996). "This is the basis of the principle that a plaintiff can plead himself out of court." *Id.* Progressive's assertion that its admission may not have been factually correct is therefore beside the point.

Nor did the district court expressly or impliedly hold that Progressive's admission was not deliberately made. There is no doubt that Progressive's admission was "deliberate" because Progressive repeated it multiple times in numerous pleadings and did not seek to amend its complaint to remove the admission, even though Dunkin' raised the issue in its answer, its motion for summary judgment, its pretrial submissions to the court, its oral argument at trial, and its post-trial Proposed Findings of Fact and Conclusions of Law.[1] *Cf. Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir. 2001). Progressive's statement is therefore a binding admission as to when it discovered the factual basis for all of its claims against defendants.

No matter, Progressive contends: even if the admission is binding, it is not dispositive because the district court granted judgment jointly and severally against all of the defendants and the

---

[1]In making this argument before the district court, Dunkin' claimed that the provision barred only "most" of Progressive's claims, noting that the "limitations provision may not apply to certain aspects of the Euclid franchise since it opened in February 2006." On appeal, Dunkin' argues that the provision is dispositive of all of Progressive's claims.

limitations provision in subsection 18.F.(5) does not apply to Third Dunkin' and its successors. This argument takes two tacks. First, Progressive asserts that the term "ADQSR," as used in subsection 18.F.(5), does not include Third Dunkin' and its successors. Second, Progressive argues that, even if "ADQSR" does encompass Third Dunkin' and its successors, the provision still does not apply because it only covers "claims and actions . . . brought in any forum by any party hereto against the other," and Third Dunkin' and its successors are not "parties" to the SDA. We find Progressive's arguments unpersuasive.

Although the first sentence of the SDA defines the term "ADQSR" to include only Dunkin' and Baskin, it is the broader definition contained in subsection 18.A that applies to the contractual limitations provision contained in subsection 18.F.(5). That section defines "ADQSR" as Baskin-Robbins USA Co., Inc., Dunkin' Donuts, Inc., and their "parent corporations, subsidiary corporations, *controlled affiliated entities*, predecessors, successors and/or assigns of each party hereto." (Emphasis added.) Because the record reflects that Third Dunkin' was operated as a controlled affiliated entity, and Progressive does not contend otherwise, we conclude that Third Dunkin' and its successors are included within the definition of "ADQSR" as that term is used in subsection 18.A of the SDA.

This leaves Progressive's argument that the provision does not apply to Third Dunkin' because it only covers "claims and actions . . . brought in any forum by any *party* hereto against the other[.]" (Capitalization removed and emphasis supplied.) The problem with this argument is that "party" in subsection 18 of the SDA is used interchangeably with "ADQSR," which, as we have just

explained, is defined in subsection 18.A to include "controlled affiliated entities" such as Third

Dunkin' and its successors. Thus, while Third Dunkin' may or may not be a "party" to the SDA

itself, it is a "party" for purposes of the use of that word in subsection 18.F.(5). Accordingly, the

district court's grant of joint and several liability to Progressive on its claims against defendants is

irrelevant. We hold that Progressive's claims are untimely, and Dunkin' is entitled to judgment as

a matter of law.

Dunkin' also asserts that the district court erroneously denied its request for costs, interest,

and attorneys' fees incurred in bringing its successful counterclaim for unpaid franchise fees. Under

Massachusetts law, a successful litigant is entitled to recover the actual, reasonable costs of the

action from an adversary if a valid contract provides for such recoveries. *Waldman v. Am. Honda*

*Motor Co.*, 597 N.E.2d 404, 406 (Mass. 1992). Here, the SDA states:

> In the event of any default on the part of Developer which shall remain uncured for
> a period of thirty (30) days from the date a written Notice to Cure specifying the
> nature of such default is given to Developer, or for a period of seven (7) days in the
> event of default for money payments, Developer shall pay to ADQSR all damages,
> costs and expenses, including interest at the highest rate permitted by law and
> reasonable attorney's fees, incurred by ADQSR as a result of any such default; and
> all damages, costs and expenses, including reasonable attorney's fees, may be
> included in and form a part of the judgment entered in any proceedings brought by
> ADQSR against Developer.

If the district court's decision to deny attorneys' fees was based on an issue of contract

interpretation, we review the decision de novo. *Adkins v. Chrysler Fin. Corp.*, 344 F. App'x 144,

147 (6th Cir. 2009) (citing *Cook v. All State Home Mortg., Inc.*, 329 F. App'x 584, 588 (6th Cir.

2009)); *see Noe v. PolyOne Corp.*, 520 F.3d 548, 551 (6th Cir. 2008). If the district court's decision was based on a finding of fact, we review the decision for clear error. Fed. R. Civ. P. 52(a).

Progressive claims that the district court's determination was based on a finding of fact—that Progressive was not in material breach of the SDA at the time Dunkin' placed Progressive on development holds—and contends that this determination was not clearly erroneous. We agree. The district court found that on the dates upon which Dunkin' used its 2005, 2006, and 2007 franchise business reviews to suspend Progressive's development rights under Section 1.A. of the SDA, Progressive was not itself in material breach of, and had substantially performed its duties under, the SDA. Because each of these suspension dates came after one or more of the alleged initial-franchise-fee due dates set forth in defendants' counterclaim and defendants' September 10, 2007, Notice of Default & Notice to Cure, the district court found that Progressive was not in default of its payments. Dunkin' has not shown that the district court's conclusion was clearly erroneous. Accordingly, we affirm the district court's denial of costs, interest, and attorneys' fees.

B. Progressive's Cross-Appeal

In its cross-appeal, Progressive contends that the district court erred in awarding Dunkin' $100,000 in franchise fees, rather than $92,000, because the court failed to factor in the Franchisors' Agreement for the Mentor site pursuant to which Dunkin' agreed to accept $32,000, in lieu of $40,000 in franchise fees. Dunkin' observes that, although the Contract Data Schedule in the Mentor Franchise Agreement stated that the initial franchise fee for that location was $32,000, the Mentor Franchise Agreement itself did not. It also notes that Eitan Flank did not dispute the $100,000 figure

at trial; that during argument on Dunkin's motion for summary judgment, Progressive's counsel stated that Progressive was "prepared to pay the other $100,000 but for the development hold"; and that in a letter in response to the Notice to Cure issued by Dunkin's collection counsel concerning the $100,000, Progressive's general counsel did not challenge that amount.[2]

Upon review, we agree with Progressive. Dunkin' acknowledged below that if the Mentor Franchise Agreement had been modified so as to reduce the initial franchise fee for the Mentor franchise to $32,000, then the total amount of fees owed by Progressive under the SDA should be reduced accordingly. And the district court found that, in fact, the Mentor Franchise Agreement had modified the fees in exactly this way: "By express written agreement of the parties to the SDA, the Initial Franchise Fee for the combined Baskin-Robbins/Dunkin' Donuts franchise for the Mentor Site was modified so as to be reduced from $40,000 to $32,000." Accordingly, the district court's award of $100,000 in franchise fees to Dunkin' should have been reduced to $92,000. Because it is clear that the district court's failure to reduce the award was merely an oversight, we may correct the error without any need for remand. *See Traylor v. United States*, 396 F.2d 837, 840 (6th Cir. 1968).

III.

For these reasons, we reverse the district court's award of damages and injunctive relief to Progressive and order the entry of judgment in favor of defendants; affirm the district court's

---

[2]Dunkin' also claims that Progressive failed to challenge the amount of the district court's damages award in its initial brief on appeal and therefore waived the argument. However, we find the argument sufficiently presented in Progressive's brief.

determination that Dunkin' was not entitled to interest, costs, and attorneys' fees on its counterclaim;

and order that the award of $100,000 in franchise fees to Dunkin' be reduced to $92,000.